## WATKINS and another vs. BRANT.

EQUITY. *Avoidance of deed for undue influence.*

1. Two sisters, A. and B., on the death of their father, inherited equally eighty acres of land, the younger, B., who was married and had children, having previously received by deed from her father forty acres. B. was of comparatively weak mind and character, timid, easily influenced, unacquainted with business, and partially deaf; and at the time of the transactions here in question was pregnant. It does not appear that her husband and family have any other resource than the land thus belonging to B. A. was a person of much intelligence, great energy and strong will, with great influence over B. By frequent interviews with and solicitations addressed to B., without knowledge of her husband, and with an agreement that he should be kept ignorant of what was done as long as possible, A., aided by the mother, induced B. to agree to convey some part of her right in the eighty acres to A. On A.'s suggestion, B. accompanied her to the office of A.'s attorney, who had, at A.'s request, prepared two deeds. By one of these A. conveyed twenty of the eighty acres, comparatively unimproved, to B.; by the other, B. conveyed the other sixty acres, with valuable improvements, to A. The attorney appears to have read the deeds in B.'s presence, and endeavored to explain their effect; but it seems doubtful whether B. understood the

explanation, and she testifies that she intended to convey only twenty acres. The attorney did not advise B. of her rights, nor decline to take part in consummating the transaction until she should consult with her husband or with her own attorney (who had appeared for her in litigation then pending between the parties in relation to their respective rights in the land); and the two deeds were then and there executed. In an action by B. and her husband to have B.'s deed avoided, *Held*, that what took place in the office of said attorney, under the circumstances stated, must be treated as *undue influence,* and both deeds should be annulled.

[RYAN, C. J., is of opinion also that, independently of what occurred at the office of the attorney, the facts show an undue influence exerted by A. upon B., by which B. was induced to agree to make the deed.]

2. It was error for the court below to merely avoid B.'s conveyance as to forty acres, letting it stand for twenty acres, and also letting A.'s deed stand; and the appeal (by A.) being from the whole judgment, this court, on reversing it, directs judgment *de novo* covering the rights of both parties.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to set aside a deed of sixty acres of land from *Juliette Watkins*, one of the plaintiffs, to the defendant *Mary A. Brant.* The land conveyed was a part of eighty acres which descended equally to *Mary A. Brant* and *Juliette Watkins* upon the death of their father, John C. Brant, intestate. The essential facts of the case will appear from the opinion.

Defendant appealed from a judgment in favor of the plaintiffs.

For the appellant, there were separate briefs by *J. F. McMullen*, her attorney, and *Jenkins, Elliott & Winkler*, of counsel, and oral argument by *Mr. McMullen* and *D. S. Wegg*.

For the respondents, there was a brief by *John A. Wall*, with *Samuel Howard*, of counsel, and a separate brief and oral argument by *Mr. Howard*.

RYAN, C. J.   The intestate left a widow and two daughters,

both adults; one single and one married; the former the appellant here, and the latter one of the respondents.

In his lifetime he had been seized of one hundred and twenty acres of land in one body, of considerable value. But some years before his death he conveyed forty acres of it to his married daughter; and died seized of the remainder. His daughter entered into possession of what was conveyed to her, and her husband, the other respondent, made valuable improvements upon it.

Upon the death of the intestate, his daughter's husband administered upon his estate. When the administrator applied for final hearing and settlement of his account and distribution of the estate, the appellant filed a petition claiming that the conveyance to her sister was made by way of advancement, and praying that the land conveyed might be deducted from the latter's share of the estate. The administrator opposed the petition, which was thereupon heard by the county court; both parties appearing, giving evidence and being heard by counsel. The county court determined that the conveyance was not made by way of advancement, that the two sisters were entitled to equal distribution of the intestate's estate, and rendered judgment against the prayer of the petition. From this judgment there was no appeal.

So far as the record before the court discloses, this judgment appears to be conclusive upon the parties. Ch. 103, sec. 16, R. S. 1858.

The only objection to the conclusiveness of the judgment which counsel was understood to suggest, is that the widow was not a party. Assuming that she was not, it is difficult to understand why she should be a necessary party, or what interest she had in the question. Her right of dower could not well be affected by the distribution of the estate between her daughters. It would be the same however equally or unequally the land should be assigned to them. She had released her dower in the land conveyed to her daughter. She

could claim no dower in that; and her dower was wholly unaffected by the question whether the conveyance was made as an advancement or not.

For the purposes of this appeal, the judgment will be taken as conclusive between the parties.

These sisters are women of mature age, approaching middle life. The appellant is some couple of years the elder. So slight difference in years, when both have reached the time of life of these women, can generally warrant no presumption of influence in the elder over the younger. In childhood and early youth, even so small a difference of age might well raise some presumption of influence of an elder sister over a younger. And that influence might sometimes continue through life, when the elder possesses decided superiority over the younger in strength of intellect and of character. It is not said that this was the case with these two sisters; but there are things in the record which suggest that it may have been.

The record presents them in marked contrast to each other. This is not said in much reliance upon the opinions of some of the witnesses, though they are of course entitled to respect. It is said of the appearance of the two sisters throughout the *res gestœ* and as witnesses in the court below.

The elder sister appears to be a woman of as high intelligence as generally prevails in her sex and rank. She is evidently a person of strong will; positive, hard, shrewd and energetic; vigilant, resolute and persevering; intent upon her own interest, with not much consideration for the interest or feeling of others. In her sphere of life, she is obviously an influential woman. The younger sister appears to be a weak person, of far lower intelligence than her sister, with little comprehension of the ways of the world, or of the rights of persons or of things; strangely indifferent to the interest of herself and her children; timid, facile, sympathetic, and singularly subject to influence; easily roused by one influence, and as easily changed by another; sometimes halting between

conflicting influences, and always fickle, uncertain and un-trustworthy in matters outside of her household duties. Her unfitness for business is increased by the affliction of deafness; and she appears sometimes to comprehend little or nothing of discussions with her or in her presence, of material import to her interest. In her household concerns only she seems to be competent and reliable; though even there she appears some-times to have yielded her own wishes to the influence of others, not members of her family.

The elder sister appears to have a trade which she has some-times followed. It does not appear that the younger sister or her husband have any resource beyond the land conveyed to her, and her share of her father's estate. She has now a large family of children, some of whom were born in the lifetime of the intestate. It is idle to speculate now upon what the intestate may have intended by way of will. Courts must deal with his estate as he left it. It was for him in his lifetime, not for courts then or now, to judge whether the statute of distributions makes a just division of his estate between the single woman, likely to have no one dependent on her, and the teeming wife, such as they relatively appear to be.

The appellant appears to have been dissatisfied with the judgment of the county court, but she took no appeal. She appears not long after to have taken legal advice, with some view of avoiding the effect of the judgment and of securing to herself one-half of the one hundred and twenty acres of which the intestate had been seized. She appears to have had frequent interviews with her attorney from thence until the execution of the conveyance to her which the complaint seeks to avoid. She appears to have had also frequent interviews with her sister, to have exercised great influence over the lat-ter; constantly renewing her solicitations, and overcoming the reluctance of her sister, until she brought the latter into the belief that their existing rights to their father's estate were unequal and unjust, and that some conveyance should be made

by the younger sister to the elder, to please the latter. The younger sister's great desire seems to have been to please the elder on some terms.

The younger sister insists that this was to be of twenty acres only, apparently unimproved. · The elder sister insists that it was to be of sixty acres, embracing valuable improvements. It is not improbable, and it is charitable to presume, that the difference rests in misunderstanding rather than in misstatement; the younger being apparently willing to do anything to please the elder, without much understanding what it was. In the one view, the younger sister was led into consenting to give away a large advantage; in the other, to surrender all advantage which she had taken by the judgment of the county court, which appears to have been thoroughly comprehended by the elder, and not very well by the younger sister.

Both sisters were examined on their own behalf; and it is little surprising in the circumstances of the two women, though very sad to witness, that their evidence conflicts in several important particulars. The learned and able judge of the court below, who patiently heard both, appears to have put greater reliance in the testimony of the younger sister; and this court is disposed to follow him, though there are inconsistencies and incongruities in her evidence, following upon the inconsistencies and incongruities in her conduct; both not improbably to be imputed to the same cause, her weakness of mind and character.

Both concur in this, that it was agreed between them throughout, that the negotiation and agreement should be kept secret from the younger sister's husband, and that the conveyance, when executed, should be concealed from him as long as possible. The elder sister testifies that this agreement was made at the suggestion of the younger, because of her fear of her husband's anger. If this were true, it would be none the less a cruel thing to induce a wife to do secretly

what must in the end expose her to her husband's anger; incurring the danger of an unhappy home. The younger sister testifies that the agreement was made on the suggestion of the other, and so the court below finds. That seems to be the more probable, certainly as to the negotiation and unexecuted agreement. The elder sister was evidently aware that the husband would not sanction the arrangement, and that his counter influence would probably put an end to it.

The husband does not seem to have been blameless in this. It appears that he produced a separation or partial separation between his wife and her mother and sister, which naturally troubled the former, and tended to confirm the influence of her mother and sister over her. And it appears to have had the effect of withdrawing all their intercourse from his observation, and so to have increased the opportunity for the secrecy on which the elder sister appears to have relied.

This secrecy, if not a badge of fraud, is surely a badge of undue influence. It is true that the statute, wisely or unwisely, gives to the wife the absolute disposal of her separate estate. But, though it may sometimes have an unfortunate tendency that way, the statute was not designed to change the natural relations of husband and wife, or to deprive the wife of her husband's counsel and just influence. When husband and wife are living together in accord, with or without a separate estate of the wife, the husband is equally the natural protector and safest counsellor of his wife. When husband and wife are living together in accord, it is an essentially vicious thing, in any ordinary circumstances, to sow any seed of discord between them. When husband and wife are living together in accord, it is an essentially vicious thing, in any ordinary circumstances, to negotiate with the wife for her separate estate, her children's prospective inheritance, upon condition of concealment from her husband. It is difficult to conceive an honest motive for it; it raises a *prima facie* presumption of unfair dealing and bad faith.

It is not to be overlooked that the mother of these sisters, with whom the elder appears to live, took sides throughout with the latter, thus adding largely to the influence brought to bear upon her younger daughter.

Neither is it to be forgotten that, during all this exercise of influence, the younger sister was *enceinte.* This condition is generally regarded as equivalent to disease; often affecting strength of mind as well as body.

The result of all this negotiation, it might perhaps be as well called intrigue, was the execution of the conveyances proposed by the elder sister. They inherited equally from their father eighty acres of land. Of this, the younger sister conveyed sixty acres, including the valuable improvements of the homestead, with a covenant against incumbrances, without exception of her mother's estate in the homestead during her widowhood. And the elder sister conveyed, and the mother released her dower in, twenty acres, apparently without valuable improvement. This is the effect of the conveyance, although it purports to convey also the forty-acre piece of which the younger sister was already seized, and covenants title to it. The covenants in both deeds are probably so broad by inadvertence. But the exchange of properties was, as against the younger sister, an unconscionable bargain.

Such a bargain, so induced, the chief justice would not hesitate to hold voidable for undue influence. See Story's Eq., §§ 239, 264–269, and the cases there cited. But a majority of the court prefer to rest the judgment upon another aspect of the case, in their view of which he concurs.

It appears that when the sisters were in the city for the purpose of having the conveyances executed, the elder suggested to the younger to consult a lawyer. It is difficult to believe that this proposition was made in good faith, or that the younger sister would have been permitted fairly or fully to consult any member of the bar competent to advise her, except the attorney already retained by the elder sister;

already instructed to draw the conveyances. She was quite too intelligent not to be aware that any competent lawyer would advise her sister against such a sacrifice of her right; against any conveyance without first consulting her husband. It seems that the elder sister counted well upon the subjection of the younger to her influence. As it was, they went together, without advice, to the office of the attorney retained by the elder sister. The gentleman who acted as the attorney of the elder sister, and his client, on the one side, and the younger sister on the other, give very different accounts of what took place there. The attorney's account of what was actually said and done may be considered satisfactory. But how far it was comprehended by the younger sister is another question.

This gentleman testifies, in effect, that he explained the nature and effect of the deeds very fully. The younger sister very positively states, that she understood that she was called on to execute and did execute a conveyance of twenty acres only. Grievous as this difference appears at first sight, it may perhaps be accounted for. The weak, deaf, pregnant woman was there to please her sister, completely subdued by her influence, and relying upon her with childish trust to perform what she understood herself to have agreed with her sister; strangely careless and indifferent in so grave a transaction, and strangely inattentive to what was said. This and her deafness may account for her misapprehension of all that was said. It is pregnant with meaning that she pretty accurately concurs with the others in her recollection of what was to be seen, and differs widely from them in what was to be heard. And this court is disposed to concur with the court below, in holding that she understood she was executing a deed for twenty acres only.

The gentlemen who acted as attorney states, that he had received previous instructions from the elder sister to draw the conveyances, and had already drawn one when the sisters

came.   He says that he stated to them, that he had understood from the elder sister that the matter between them had been settled, and that the conveyances were drawn in accordance with the settlement; that the deeds would vest sixty acres of the one hundred and twenty which had been their father's farm, in each of them; and that the litigation about it was to be settled in that way.   He states that he read to them the descriptions of land from both conveyances, and that before the younger sister executed her conveyance, he asked her to look at both; that she took them up very briefly, laid them down, and then executed her own.

This court, like the court below, intends to imply no doubt of the attorney's personal or professional integrity.   His error was presumably one of judgment, for want of consideration, palliated by the fact of his being a stranger to the younger sister.   But he signally failed in professional duty to her whose conveyance of her patrimony he drew, without having ever seen her, not on her retainer, but on her grantee's.   He knew of the litigation in the county court.   He knew that counsel had there represented the rights of the woman brought to his office by his client.   He knew of the judgment of that court in her favor.   He may have brought himself to believe, he may have been right in believing, on behalf of his client, that the litigation which he mentioned might change the respective rights of the sisters.   But while he gave the benefit of his professional learning and skill to the elder sister, he ought to have known and felt that the younger could not safely act in so grave a transaction, in secrecy from her husband, without the aid of equal professional learning and skill.   It was against all professional ethics, against all propriety, to suffer that woman, without professional advice of her rights, without advising her of them himself, in the absence of the counsel who had maintained them, without the knowledge of her husband, without the counsel or sanction of any friend, alone, and in an apparent condition of weak health, to avoid

the effect of the judgment of the county court; to surrender so large a proportion of her inheritance from her father, which her children, born and unborn, might in time look to inherit from her. It is not within the office of the profession to aid in such undue advantage. It was the plain professional duty of the gentleman who was the elder sister's attorney here, to have told these women, in these circumstances, that he would take no part in consummating the agreement between them, until the younger sister had taken proper professional advice, or had at least consulted her husband. No such transaction should ever be consummated as it were *ex parte* in a lawyer's office. This gentleman presumably acted without conscious bad faith. But the effect was the same. And this court holds what took place in his office to be equivalent to undue influence — adequate ground for avoiding a conveyance so executed.

The judgment of the court below avoids the younger sister's conveyance as to forty acres only, and lets it stand for the twenty which she intended to convey; and lets the conveyance of the mother and elder sister stand. This court holds that both conveyances should have been avoided *in toto*, restoring both parties *in statu quo ante*. Avoiding the one conveyance, though even in part, without restoring the consideration for what was avoided, is error. The appeal is from the whole judgment, giving jurisdiction to this court to direct judgment *de novo*, covering the rights of both parties. And the direction is to enter judgment avoiding the conveyance of 16th November, 1876, from *Juliette Watkins* to *Mary A. Brant*, and the conveyance of the same date from *Mary A. Brant* and Martha Brant to *Juliette Watkins*, both attached to the record in this cause.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below for judgment according to the direction of this court.