Lefebvre vs. Dutruit, imp.

LEFEBVRE vs. DUTRUIT, impleaded with her husband.

*January 17 — February 8, 1881.*

HUSBAND AND WIFE. *Wife's signature to mortgage of homestead held not to have been obtained by coercion or undue influence.*

D. being a defaulter as county treasurer, in the sum of $6,000, his sureties, to indemnify themselves against their liability, induced him to execute his notes for that amount, and have the same secured by a mortgage of $12,000 worth of real property of his wife, including her homestead worth $2,000. The wife was reluctant to mortgage the homestead, though willing to mortgage the other property; but, after the husband had continued his importunities through a period of several days, she signed a mortgage of the whole. The husband stated correctly to her his situation, including his liability to a criminal prosecution, and also stated that " before he would go to jail, he would shoot himself through the brains;" and urged that there was no way by which he could be relieved from his difficulties except by her executing the instrument. Afterwards a justice of the peace went to her house with an attesting witness, and presented the mortgage to her; and she took and examined it, admitted her signature thereto, and said that she knew all about the mortgage, and it was all right; and the justice thereupon took it, and retired, with the attesting witness; and he afterwards delivered the in-

strument, duly attested and with the usual certificate of acknowledgment written thereon, to D., who delivered it to the mortgagees. Soon after the justice and witness left the presence of Mrs. D., they were induced by other persons to return to the house, and she then, in their presence, again acknowledged her signature, but said that she was "forced to sign;" but it does not appear that the mortgage was then produced, or that Mrs. D. recalled any previous statement made by her to the justice. Neither of the mortgagees knew, until this action to foreclose the mortgage was commenced, nearly two years later, that Mrs. D. had hesitated about executing it. It does not appear that either of them ever threatened D. with a criminal prosecution, or that D. represented to his wife that such a prosecution was *threatened* by any person. *Held*, that the mortgage is valid.

APPEAL from the Circuit Court for *Wood* County.

Action to foreclose a mortgage on several parcels of land, executed by the defendants to the plaintiff and another, to secure the payment of the notes of the defendant husband for $6,000. All of the mortgaged premises are the separate estate of the defendant wife, and one of the parcels is her homestead.

The husband did not answer. The wife answered, alleging that she signed the mortgage under coërcion; that her signature was obtained by the importunity of her husband and his undue influence over her; and that she never acknowledged it to be her free act and deed, or authorized the delivery of the mortgage to the mortgagees. She further alleged that her husband was treasurer of Wood county from November, 1862, continuously, until January, 1876; that during his last term the mortgagees were sureties upon his official bond; that when he retired from such office he was a defaulter to the county in the sum of $6,000, and was insolvent, and the mortgagees were liable to pay the amount of such defalcation; and that in December, 1876, the county was about to institute a suit on the official bond of Dutruit for the deficiency, whereupon the plaintiff persuaded him to execute the notes above mentioned, and to procure his wife to execute the mortgage in suit.

The answer then alleges as follows: "That said Emanuel

Dutruit, pursuant to the request and urgent solicitations of said plaintiff, requested this defendant to execute said pretended mortgage, which she at first persistently refused to do, but, after urgent and repeated solicitations of the said Emanuel, and upon his representations that it would save him from a criminal prosecution which would otherwise be instituted against him for such deficit — which representations he, the said Emanuel, was induced to make to this defendant by the urgent solicitations and threats of the plaintiff, as she is informed and believes,— she was induced, persuaded and coerced to execute said mortgage in form, though she never consented thereto, and never acknowledged the same as her free act and deed, and she would never have signed the same had it not been for the representations so made to her that it would save her said husband, the said Emanuel, from a criminal prosecution for embezzlement of the said funds of the said county of Wood; that on the day of the execution of said mortgage, and for many days and nights prior thereto, the said Emanuel unduly persuaded, insisted and demanded that this defendant should sign said mortgage, and by his language and conduct unduly influenced and coerced this defendant to sign and execute the same against her will, in order to save her said husband harmless from the threatened prosecution; and that the said mortgage was not the free and voluntary act of this defendant, and was never by her acknowledged as such, either at the time of the pretended execution thereof or since; and that she never delivered or authorized the delivery of said mortgage; and defendant says that she is informed and believes that the plaintiff had full knowledge of the facts above recited, prior to and at the time he accepted and received the said pretended mortgage."

The court found for the plaintiff on all the issues. Judgment of foreclosure, and for the sale of the mortgaged premises, was entered pursuant to the findings. The testimony is sufficiently stated in the opinion. *Mrs. Dutruit* appealed from the judgment.

The cause was submitted on the brief of *G. W. Cate* for the appellant, and that of *Webb & Cochran* for the respondent.

. Counsel for the appellant cited 2 Kent's Com., 453; 2 Story's Eq. Jur., 239; *Whelan v. Whelan*, 3 Cow., 537; *Eadie v. Slimmon*, 26 N. Y., 1; *Boyd v. De La Montagnie*, 73 id., 502; *Darlington's Appeal*, 86 Pa. St., 512 (27 Am., 826); *Bogie v. Bogie*, 37 Wis., 373; *Watkins v. Brant*, 46 id., 419. To the point that the burden was upon the plaintiff to show the transaction fair and proper, counsel cited also *Sears v. Shafer*, 6 N. Y., 268; *Ford v. Harrington*, 16 id., 285; *Coutts v. Acworth*, L. R., 8 Eq., 558, 567; *Hoghton v. Hoghton*, 15 Beav., 278.

LYON, J. It is essential to a correct determination of this appeal, to ascertain the circumstances under which the mortgage in suit was executed, and the influences which were brought to bear upon *Mrs. Dutruit* to induce her to execute it.

The mortgage was given about December 30, 1876. It had then been ascertained that Dutruit was a defaulter to the county in the sum of $6,000, and the mortgagees, who were his sureties and liable therefor, were naturally anxious to obtain some indemnity against such liability. Negotiations were thereupon had between the mortgagees and Dutruit, which resulted in an agreement for the execution of the notes and mortgage in suit. *Mrs. Dutruit* was entirely willing to mortgage all of her real estate except her homestead, to help her husband out of his difficulties; but she objected to having her homestead included in the mortgage. The alleged value of the homestead is $2,000; of all the property mortgaged, $12,000. For several days and nights Dutruit pressed his wife to sign the mortgage. He told her of his trouble, and that he was liable to be prosecuted criminally. He said that before he would go to jail he would shoot himself through his brains; that there was no other way — she *must* sign it. She then

signed the mortgage. She testified: "I had such a fear that something wrong would happen, that I finally consented to it." Mr. and *Mrs. Dutruit* alone are the witnesses to what passed between them, and necessarily so, because no other persons were present when the transactions occurred. After *Mrs. Dutruit* signed the mortgage, her husband took it to Dr. Hurley, a justice of the peace, to have the execution thereof perfected. The justice thereupon proceeded to the residence of *Mrs. Dutruit*, taking with him one Massy for an additional attesting witness, and presented the mortgage to her. She took the mortgage, examined it several minutes, admitted that the signature thereto was written by her, and said to the justice that she knew all about the mortgage, and it was all right. The justice then took the mortgage and placed it in his pocket, and he and Massy retired. He afterwards delivered the mortgage, duly attested and with the usual certificate of acknowledgment written thereon, to Dutruit, who delivered it to the mortgagees. There may be a little testimony controverting some of the above facts, but we think they are all established by a clear preponderance of evidence. There is evidence tending to prove that, soon after the justice and Massy left the presence of *Mrs. Dutruit*, they met Dutruit and one Rossier, his brother-in-law, and at their request the justice returned with them to *Mrs. Dutruit;* that they had some conversation before they returned as to the questions the justice put to her, and, after they returned, either the justice or another of those present asked her if she was forced to sign the mortgage, and she replied "Yes." Also that she replied in the negative to the question, "Did you sign that mortgage of your own free will and accord?"

The justice denies any talk about the mode of acknowledgment, and says they called him back into the house, and Rossier asked *Mrs. Dutruit* whether "she signed that instrument or writing," and she replied "Yes." He then asked her: "Were you forced to sign that mortgage?" and she replied,

" I was forced to sign it." It does not appear that the mortgage was produced on that occasion, or that *Mrs. Dutruit* recalled any of the statements previously made to the justice, or referred to them. Neither does it appear that either of the mortgagees knew, until the answer was interposed (which was over two years later), that *Mrs. Dutruit* had hesitated, or made any objection whatever to executing the mortgage; or that either of them was aware that any pressure had been brought to bear upon her by her husband to induce her to do so. He testifies that he concealed from the plaintiff the fact that his wife objected to signing the mortgage, and told the justice it was all right — that it was with the consent of his wife. Neither does it appear that either of the mortgagees ever threatened a criminal prosecution, or suggested that one might be commenced, or that Dutruit represented to his wife that such prosecution was threatened by any person. Dutruit testified that some one (not the plaintiff) intimated that he might be prosecuted, and she testified that he told her, unless she signed the mortgage, he certainly would be prosecuted as a defaulter. This is subtantially all the testimony on the subject.

The foregoing are the material facts in the case. We are to determine whether they are sufficient to invalidate the mortgage. There is no prescribed formula of the acknowledgment of a conveyance. It is sufficient if the grantor, after being fully informed of the contents of the instrument, declare to the officer taking his acknowledgment that he executed the same. In this case *Mrs. Dutruit* knew the contents of the mortgage, declared her approval thereof, and acknowledged that she executed the instrument. This is a valid acknowledgment. True, she afterwards denied, in the presence of the justice, that she executed it freely, but she did not attempt to cancel or recall the acknowledgment previously made; and it may be doubted whether she could withdraw her acknowledgment after having once made it. After signing the mortgage,

*Mrs. Dutruit* left it in the possession of her husband, and after acknowledging it intrusted it to the justice, who took it away with him without objection on her part. Presumably she did so for the purpose of having the instrument perfected and delivered to the mortgagees. She does not testify to the contrary. We think there was a valid delivery of the mortgage.

There is no evidence in the case tending to show duress of imprisonment, or threats of imprisonment. Dutruit had committed a crime, and was liable to be prosecuted therefor and imprisoned. But it does not appear that any person had threatened to prosecute him, or that his wife had been informed that he was threatened with a criminal prosecution. There is, therefore, no question of duress to the husband in the case.

The case is equally barren of testimony tending to show duress to the wife. She was not coërced to sign the mortgage. True, her husband said that she *must* sign it; but it is perfectly obvious from the testimony of both that this was not in any sense a command, and was not so understood by either, but was only a declaration that there was no other way to avert the probable consequences of his crime.

In our opinion, therefore, the inquiry is narrowed to the single question of undue influence. Was the execution of the mortgage by *Mrs. Dutruit* procured or induced by the influence of her husband over her, unduly and unlawfully exerted?

No fraud was practiced upon *Mrs. Dutruit*. No material fact was misrepresented to her or concealed from her. She was told by her husband (as the facts were) that he was a defaulter to the county, and that his defalcation was a crime which exposed him to criminal prosecution and punishment. He undoubtedly hoped, probably believed, that if his wife would execute the mortgage, prosecution and punishment would be averted. He saw no other avenue of escape, and so informed his wife. He explained the situation to her fully and truly, and no doubt gave her his candid opinion of results

should she give or withhold the mortgage. He did not claim or pretend to her that prosecution had been threatened, and it does not appear that any had been threatened. The elements of misrepresentation and concealment, or fraud of any kind, are not in the case. *Mrs. Dutruit* executed the mortgage with full and accurate knowledge of the situation.

Most undoubtedly her husband importuned her to rescue him from his embarrassments by giving the security. It is apparent that she was willing from the first to pledge all of her property to relieve him, except her homestead, which represented but one-sixth of the value of the whole property mortgaged. She included the homestead in the mortgage reluctantly and regretfully, no doubt, yet knowingly and intelligently.

Hence the question narrows down to this: Is the mere importunity of the husband sufficient to avoid the conveyance of the wife procured by such importunity, in the absence of duress, threats, coërcion, oppression or fraud? In stating this question, we do not forget the idle threat of Dutruit, made with such particularity of detail, that "rather than go to prison he would shoot himself through his brains." *Mrs. Dutruit* does not say that she feared he would commit suicide, and manifestly did not fear it. The "something wrong" which she testified she feared would happen, evidently referred to a criminal prosecution of her husband and its consequences.

The courts have always jealously scrutinized transactions by which a wife has attempted to pass her separate estate to her husband, or charge it for his debts, and have never hesitated to set aside her conveyance when the same has been obtained by any improper means. The statute which empowers a wife to deal with her separate estate as though she were sole, does not call for or justify any relaxation of such scrutiny, or lessen her right to the watchful protection of the courts. In the light of this well-settled and just principle, we have carefully examined numerous cases (including many of those cited by the

learned counsel for the appellant) bearing upon the question under consideration. In each of the cases examined, in which such a conveyance has been set aside, we find that the same was procured either by duress, actual or threatened; by concealment or misrepresentation of material facts, or some other fraud; by oppression or terror; or by some act or conduct which overcame the will.

Perhaps *Eadie v. Slimmon*, 26 N. Y., 9, is a fair illustration of the general characteristics of that class of cases. Slimmon went to the house of Eadie (the plaintiff's husband), who had been his clerk, accompanied by an attorney and a person whom he represented to be an officer, and charged Eadie with having embezzled his money while in his employment. Slimmon demanded, among other things, that Mrs. Eadie should assign to him a policy held by her on the life of her husband, threatening that if his demands were not complied with Eadie should be arrested at once and taken to prison. Slimmon was imperious in his demands, and, with his associates, was at the house of Eadie several hours — in fact, nearly all night, — insisting on compliance and threatening arrest. Mrs. Eadie became almost frantic with grief and terror, and finally assigned the policy. The action was brought to cancel the assignment, and it was canceled. The ground of the judgment is thus stated in a few sentences: "The assignment from the plaintiff to the defendant was most clearly extorted by a species of force, terrorism and coërcion, which overcame free agency; in which fear sought security in concession to threats and to apprehensions of injury. It was made as the only way of escape from a sort of moral duress more distressing than any fear of bodily injury or physical constraint."

Some of the cases go upon the mental or physical weakness of the grantors, and the fact that the conveyances were made in the absence of proper counsel, and were inequitable. *Watkins v. Brant*, 46 Wis., 419, belongs to this class. See, also, *Bogie v. Bogie*, 37 Wis., 373. That case, however, turned

upon the non-delivery of the deed. So, in many of the cases, the conveyances were mere gifts to the grantees, who were the parties seeking to uphold them; and, in these, fraud or weakness of intellect, or some other of the elements of invalidity before mentioned, have usually been present.

We find no case, however, in which mere importunity, unaccompanied with fraud or duress, or circumstances of mistake or oppression, or weakness of intellect, has been held to invalidate a conveyance. Neither are we aware of any legal principle which in such a case will work such a result.

The learned counsel for the appellant maintains that the burden of proof is upon the plaintiff to show affirmatively that the mortgage was freely executed by *Mrs. Dutruit*. But the question is not here, because all the circumstances of its execution are in evidence, and it is now immaterial from which side the evidence came.

The fact that *Mrs. Dutruit* allowed the mortgagees to rest quietly over two years in the faith that they had a valid security, is not without significance, but it is not a controlling fact in the case. Hence the effect of such delay will not be considered. Upon the best consideration we have been able to bestow upon the case, we are brought to the conclusion that the mortgage in suit is a valid security. We must therefore affirm the judgment of the circuit court.

*By the Court.*— Judgment affirmed.