OWEN KELLEY, Appellant.

*vs.*

JOHN SHELDON and MARY SHELDON, Respondents.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

K. having a contract with S. for the purchase of lands at ten dollars per acre, falsely represented that the lands were worth far less, and thereby procured a new contract at $8.00 per acre, and made part of the payments, when S. put an end to the contract, and K. filed a bill for specific performance; held that such a contract was void for the fraud; but K. having paid a part of the purchase money under the contract, was entitled upon this bill to have the the amount paid, refunded to him.

The bill in this case states that on the 29th of November, 1854, Sheldon and his wife made a contract with Kelley for the sale of a quarter section of land in Cook county Illinois, for $1280, to be paid for, $100 the first of January and February each, $126,66 the first of March, $426,67 the 15th of September next after date, and $426,67 the 15th of September, 1856, with interest on all amounts due, and also pay all taxes; that the three first payments had been paid; that on the 19th of September, 1855, the defendant called for the amount due, $475, and the plaintiff offered to give a certificate on a Milwaukee bank, and it was agreed that the defendant would take it if he could have such money as he wanted; that Sheldon complained he had sold the land too low, and the matters must be settled with some other person; and they parted; that the plaintiff then procured the gold and tendered it to Sheldon, who refused to take it claiming that he was released from his contract; for that reason the instalment and interest due September, 1856, was not tendered, but was brought into court with the bill to be paid over to the defend-

Kelley vs. Sheldon.

ant. It also averred that Sheldon had no real or personal property, except such as was exempt from execution, and that he intended to convey the land. It prayed injunction to restrain the sale, &c. The injunction was granted.

The answer of Sheldon confessed the making of the contract and the payments; also the tender of the 19th of September, and his refusal to take the bills and certificates offered him; and that on the 20th of September he notified the plaintiff that the contract was broken, and he would not receive the money upon it all; that he was the owner of the land described in the contract in fee; that the same is situate in Illinois; that at the time complainant proposed to defendant to purchase it, he had not seen it for a number of years, and knew very little of its value; that he proposed to sell it to the complainant for the sum of ten dollars per acre, and gave a contract to him to that effect; and he further says that about the time the contract in the bill mentioned was executed, the complainant came to him and informed him that he had seen the land, and as an inducement to him to take a less price therefor, and with an intent to defraud him, falsely represented that trespassers were stripping the land of timber, and that other lands of the same quality and equally eligibly situated in the same neighborhood, were selling for seven dollars per acre, while he is informed and believes, and charges the fact to be, that at the very time complainant went to Illinois to see the land, he represented himself as the owner thereof, and was offered while there at the rate of fifteen dollars per acre for a large portion of the land; that the complainant well knew at the time he made the representations to this defendant, that he was ignorant of the value of the land, and that he relied upon and believed these representations to be true; and this defendant charges that the complainant made the representations falsely and with intent to obtain the property of him at a price greatly below its value,

through false pretences; and he further says, that relying solely upon these representations, he was induced by complainant to sell him the land for the price mentioned in the contract, with the express understanding that time should be of the essence of the contract, and upon the failure of the complainant to fulfil any of the covenants thereof, at the time and in the manner prescribed, this defendant should have the right to declare the same void; and this defendant claims and insists that the contract was obtained by fraud and false pretences on the part of the complainant; that he has failed to fulfil the conditions of the same; and that this defendant is not bound to receive the money according to the terms thereof, or to execute the stipulations in said contract on his part; and he further says, that he should have declared the contract void at the outset, and refused to receive any money thereon, had he known of the false representations which the complainant had made to induce him to execute the same; but he did not know of the falsity of the representations until after the money was paid, as hereinbefore set forth; and that since he so discovered it, he has been ready and willing, and now is ready and willing to refund to the complainant the money paid upon the contract, and has offered to do so.

The contract was in the usual form of contracts for deeds, but contained the following words: " The several times of payment of the said several sums of money and the interest thereon, being hereby expressly made of the essence of this contract, and insisted upon."

On the trial a large amount of evidence was taken, but as the important points proved are stated in the opinion of the court, they will not be repeated here. The order of the circuit judge was as follows:

This cause came on to be heard upon the bill, answer and proofs taken and filed herein, and was argued by counsel, and having been fully considered by the court, it is now

ordered, adjudged and determined, and this court doth order, adjudge and determine that the complainant's bill of complaint in this cause be and the same is hereby dismissed, and that the defendants recover their costs, to be taxed.

Dated April 3, 1857.

By the court.

ALEXANDER W. RANDALL, Circuit Judge.

The plaintiff appeals to the Supreme Court.

*Levi Hubbell*, for the appellant.

*Butler & Butrick*, for the respondents.

*By the Court*, COLE J. We think it would be unconsionable to enforce a specific performance of the contract set forth in the pleadings in this case. As we understand the testimony, it shows most clearly, satisfactorily, and conclusively, that Sheldon was induced to abandon a previous contract, which he had made with Kelley, for the sale of this identical tract of land, for ten dollars an acre, and enter into the contract, which is sought to be specifically enforced, and in which the land is sold for eight dollars an acre, and this too by means of the misrepresentations and gross fraud practiced upon him by Kelley, relating to the true value and actual condition and character of the land. The parties to this contract lived in Milwaukee county, and the land in controversy was situated at a distance in Cook county, in the State of Illinois. It appears that Sheldon had not seen the land for some time, while Kelley went down to see it, and did personally examine it, before the making of the contract of the 29th of November, 1854, set forth in the bill of complaint. Upon this point the witness, Albert Wingate, testified that Kelley was at his house on the Saturday night prior to

the 20th of November, 1854; and that he, the witness, resided about a mile from this land; that Kelley then claimed that it was an extraordinary good piece of land; and that he considered it worth fifteen dollars an acre. This witness went with Kelley over the land, aided him in finding a purchaser, and says that the land was worth from twelve to fifteen dollars an acre at that time. It appears that Kelley then saw the Klines and had a talk with them about buying the land, and told Wingate he thought he had sold it to them. Another witness, J. C. Whitman, says, that Kelley was at his house near the land, in November, 1854, and after the 20th of that month, and offered the land for sale; asked twelve dollars and fifty cents an acre for it, and said it was worth that, and he thought he could make the Klines take it at that price, if he could satisfy them that the title was good. This witness says that land in the vicinity was cheap at twelve dollars an acre, and that this tract would have been cheap at that price. Two other witnesses, S. D. Huntington and E. M. Everdon testify that they were acquainted with the land; that it was good land, and worth from twelve to fifteen dollars an acre in November, 1854. The evidence shows that the following matters occurred between the parties, just previous to the making of the contract of the 29th of November. Lothrop Smith says, in substance, that he was at work for Sheldon on the 23d of November, 1854, and that Kelley came there, and stated to Sheldon, that he had been to Illinois, where the land was; and that he could get just as good land there, adjoining Sheldon's land, for seven and eight dollars an acre; represented to Sheldon that persons were on this land, which he had previously bought, and were cutting timber there, and that a good deal of timber had been taken off, &c. Mary Culiett testifies to substantially the same things, as being said by Kelley to Sheldon; Eben Cornwall also testifies, that he heard Kelley say in November, 1854, to Sheldon, that he could get

land in Illinois, just as good as that he bought, for seven dollars an acre; that the neighborhood where this land was situated was a bad one; and that he would not live there on any account; and that the land was not worth more than seven dollars an acre, and that he could not afford to give more, but would give seven dollars and fifty cents per acre because there had been so much said about trading, &c.

Now, what is the fair, legitimate, irresistible inference from this testimony. It must be remembered that there had been a previous contract for the sale of this land for ten dollars an acre. This previous contract was abandoned, and the contract of the 29th of November entered into. This latter contract was made after Kelley had been down to examine the land after his talk with Klines about buying it, when he knew all about the land; that it was a fine quality, eligibly situated, in a good neighborhood and really worth at least twelve dollars an acre. He knew, too, that he was trading with a man who was ignorant of the true condition, and real value of this property; who had not seen it for some time. Considering then the nature and circumstances of the transaction, the situation of the contracting parties, is there room to doubt that Sheldon acting upon the faith of the representations made to him by Kelley, as to the condition of the land, and its value, abandoned the old contract and entered into the new one, thinking he was obtaining a fair compensation for the property, when selling it for eight dollars an acre? And is it not equally apparent, that Kelley made 'these false statements in reference to the land, its situation, the neighborhood in which it was located, the assertion about trespasses having been committed upon it, with the deliberate purpose and design of deceiving Sheldon; expecting that he would act upon the representations, which he himself well knew to be entirely false. Judging from every principle of human conduct, and the motives which usually influence

men, he could have had no other design, and expected no other result. Now to permit him to reap the benefits of his own fraud would be inequitable and unjust. We therefore think the circuit court very properly refused to enforce a specific performance of this contract. But still we are of the opinion that the bill ought not to have been dismissed. It appears that over four hundred dollars have been paid upon this contract. It is alleged in the bill of complaint that Sheldon is embarassed in his pecuniary circumstances. Whether he is or not is quite immaterial, for the circuit court having the case before it, ought to have done complete justice between the parties. The case should have been retained, and the money already paid upon the contract with interest, ought to have been ordered to be paid back by Sheldon.

The judgment of the circuit court dismissing the complaint for this reason must therefore be reversed, and the cause remanded to that court for further proceedings in accordance with this decision.