BUSSIAN vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

*November 25 — December 12, 1882.*

RAILROADS: HIGHWAYS: NEGLIGENCE. *(1, 2) Tracks over highways, how to be used. (3) Leaving cars on switch track in highway, negligence: owner of track responsible. (4) Contributory negligence.*

RELEASE: FRAUD. *(5) Release pleaded in bar may be shown fraudulent in same action: Court and jury. (6) Utmost good faith required in release pendente lite. (7) Case stated.*

1. Secs. 1828, subd. 5, and 1836, R. S., were intended to give railroad companies the right to use highways for passage with their cars and engines, but not for depot purposes of any kind.

2. If a railroad company has the right to extend a switch track into the highway, it is bound to use such track in such a manner as not unnecessarily to interfere with public travel over such highway.

3. The leaving of a car upon a switch track within the limits of a highway, and near to the traveled part thereof, for several days, if not negligence in law, at least tends to prove negligence on the part of the railroad company which constructed and owned such track; and it is immaterial that such car belonged to, and was placed there by the direction of, another railroad company.

4. A car standing upon a switch track in a highway close to, but not obstructing, the traveled part thereof (which at that point was upon a grade several feet above the ditches on the side of the street), could be seen for a considerable distance by persons passing along the highway. The plaintiff, who was on the top of a load of stave bolts upon a sleigh, attempted to pass the car, when the horses became suddenly frightened at the sight of it and sprang to one side, throwing the sleigh with its load off from the grade, upsetting it, and injuring the plaintiff. *Held*, that these facts did not conclusively show negligence on the part of the plaintiff.

5. A release of all claims, which is pleaded as a bar to an action at law, may, *in that action*, be shown to have been obtained by fraud, misrepresentation, or undue influence, if all the parties to the release are parties to the action, and the finding of the jury upon the question of fraud has the same force as their verdict upon any other issue in the action.

6. After an action has been commenced and counsel employed, no release obtained from the plaintiff, in the absence and without the consent or knowledge of his counsel, should be held valid, unless the utmost good faith is shown on the part of the defendant in obtaining the same.

7. After the plaintiff had commenced her action against a railroad company to recover damages for personal injuries, the agent of the company obtained a release from her in the absence of her counsel, and when she had no proper adviser. The execution of the release was urged upon her by her attending physician, acting on behalf of the company, when she desired a postponement until she could consult her counsel. She was uninformed as to the amount of charges her attorneys would be entitled to demand for their services, and the defendant's agent represented that the company would probably defeat her in the action, and, if it did not, her counsel would probably absorb whatever damages she might recover after an uncertain and protracted litigation. *Held*, that the jury were justified in finding that the release was a fraud upon the plaintiff.

APPEAL from the Circuit Court for *Outagamie* County.

Bussian vs. The Milwaukee, Lake Shore & Western R'y Co. ·

Action to recover for personal injuries sustained by reason of the wrongful and negligent acts of the defendant. The facts are stated in the opinion. The plaintiff's attorneys were permitted to testify, upon the trial, against defendant's objection, as to the date at which they were retained in the action and as to the value of their services rendered before the execution by the plaintiff of the release of her claim. The instructions requested by the defendant, referred to in the opinion, were as follows:

"1. If the jury find from the evidence this car could be seen for a distance of thirty or forty rods before the plaintiff and her son approached it, then it was the duty — and the car was standing still upon the track, not in motion — of the plaintiff and her son to have avoided the car, and if they did not do it, it was negligence upon their part and they cannot recover. 2. If the jury find this track was used in common by the *Milwaukee, Lake Shore & Western Railway Company* and the Green Bay & Minnesota Railroad Company, and the jury find the car was placed where it was by the employees, or under the direction of the employees, of the Green Bay & Minnesota Railroad Company, then that company alone is liable, if anybody is, and the defendant in this case is not liable. . . . 5. If there was any negligence on the part of this plaintiff that contributed to this injury, she cannot recover."

The court refused to give the above instructions. There was a verdict for the plaintiff assessing her damages at $700, and from the judgment entered thereon the defendant appealed.

*Alfred L. Cary*, for the appellant.

For the respondent the cause was submitted on the brief of *Gabe Bouck*. To the point that the defendant, being the owner of the switch track, was liable even though the cars thereon belonged to the Green Bay & Minnesota Railroad Company and had been placed there by the direction of the

servants of that company, he cited: 1 Redf. on Railways, 602; *McElroy v. Nashua & L. R. R. Co.*, 4 Cush., 400; *Langley v. Boston & M. R. R. Co.*, 10 Gray, 103; Pierce on Railroads, 283; *Railroad Co. v. Brown*, 17 Wall., 445; *O. & M. R. R. Co. v. Dunbar*, 20 Ill., 624; *Ind., Cin. & L. R. R. Co. v. Warner*, 35 Ind., 516; 1 Thomp. on Neg., §§ 8, 12, 345, 509; *Harrison v. Collins*, 86 Pa. St., 153; 2 Thomp. on Neg., 1088, and cases cited; *Lake v. Milliken*, 62 Me., 240.

TAYLOR, J. The material facts in the case may be briefly stated as follows: The defendant company, in constructing its railroad through the city of New London, in this state, constructed a switch track, one end of which extended into one of the public streets of said city, nearly to the center of the same and up to the traveled part thereof, but not across it; that some days before the accident happened a number of freight cars, either belonging to the defendant company or to the Green Bay & Minnesota Railroad Company, were placed upon said switch track, and one of the cars at the end of the track extending into the highway was pushed within the limits of the highway and close up to the traveled part thereof, and was left there within the highway for several days, and until the accident happened. The evidence shows that the cars were pushed into the street by an engine of the defendant, operated by its employees, but it also tends to show that the cars placed upon the switch and the one in the highway belonged to the Green Bay & Minnesota Railroad Company, and that they were placed there by the direction of the employees of the last-named company. The evidence also shows that the traveled part of the street, at the place where the switch extended into the street, was upon a grade several feet above the ditches on the side thereof; that on the day the accident happened the plaintiff was riding upon a sleigh on the top of a load of stave bolts, which her son was carrying to market, and when the team

came near the car standing in the street, the horses became suddenly frightened at the sight of the car and sprang to one side, throwing the sleigh with its load off the grade, upsetting the same, and injuring the plaintiff. The evidence also shows that there was room on the traveled part of the road to pass safely if the horses had not been frightened and had not deviated from the track. The car standing in the highway could be seen for a considerable distance by one approaching it along the highway.

The evidence also shows that after the action was commenced the defendant company obtained from the plaintiff a release of all claims for damages in the action, and an agreement to discontinue the same. This release was set up by way of supplemental answer. The plaintiff, on the trial, claimed that the release was obtained by fraud, misrepresentation, and undue influence. The plaintiff had a verdict upon the trial at the circuit court, and from the judgment entered thereon the defendant appealed to this court.

The learned counsel for the appellant insist: (1) that the evidence shows that the company lawfully extended their switch track into the highway at the place where the accident happened, and that they had the lawful right to place their cars upon such track within the highway and keep them there, and consequently the company was guilty of no negligence in so doing, and the court should either have granted a nonsuit or directed a verdict for the defendant; (2) that the undisputed evidence shows that the car which stood in the highway did not belong to the defendant, but to the Green Bay & Minnesota Railroad Company, and that it was placed there by the employees of said company, and not by the defendant; (3) that the plaintiff was guilty of contributory negligence in riding upon the top of a load of stave bolts along the street, and in attempting to pass along the street by said car in that situation on the load; (4) that incompetent evidence was admitted for the purpose of avoid-

ing the release given by the plaintiff; (5) that there was no evidence of fraud, misrepresentation, or undue influence, sufficient to justify a verdict avoiding such release.

It is claimed that by virtue of subd. 5, sec. 1828, and sec. 1836, R. S. 1878, the defendant company was authorized to extend its switch track into the highway, and to use the same with its cars and engines. It may be admitted for the purposes of this case that the switch track was lawfully constructed and maintained in said highway, and that the company was authorized to use such track for the purpose of switching its cars; still, we are of the opinion that the sections of the statute referred to do not authorize the company to use the track within the highway for the purpose of storing its cars. We think the provisions of the statute were intended to give the railroad companies the right to use the highways for passage over the same with their cars and engines, but that it was not intended to confer on such companies the right to use such highways for depot purposes of any kind. Such use would be inconsistent with the right of the public to their use as highways, and, in the absence of any express provision of law conferring that right, no presumption ought to be indulged in which would justify such use. *Lackland v. Railroad Co.*, 31 Mo., 180-185; *State v. Railroad Co.*, 25 N. J. Law, 437.

In the last case the court approved the following charge of the trial judge: " The whole community are interested in the highway; every citizen and every traveler has a right to a free passage over it, and their rights, so far as is necessary for the settlement of this case, are paramount to the right and convenience of the company." And the court further say: " The right of the company, under their charter, to use the public highway for mere purposes of transit, was not the matter in question. That was not necessary to the settlement of the case. . . . It had previously been stated by the judge in his charge that the company had a right to construct a

Bussian vs. The Milwaukee, Lake Shore & Western R'y Co.

depot, . . . but that the company were bound to so locate the depot that they could receive and discharge freight and passengers without injuriously interfering with the use of the highway by the public."

In the case at bar, if the company had the right to extend their switch track into the highway, they were bound to use such track in such manner as not to unnecessarily interfere with the public travel over the same. If they might use it temporarily, by backing the cars within its limits for the purpose of changing the position of their trains or cars upon the tracks of the company, or for the purpose of unloading one or more cars at the elevator, this would not justify the company in leaving such car or cars within the highway for an indefinite period, and thereby unnecessarily endangering the public travel over the same. The evidence shows that the track extending into the highway was considered a dangerous thing, so much so that the city authorities at one time removed one of the rails in order to prevent the cars from being pushed into the street, and that it was afterwards replaced by the company. If the leaving of the car in the street for several days, near the traveled track, was not negligence in law, it was certainly evidence tending to prove negligence on the part of the company, and it was proper to submit the question to the jury. We think there can be little doubt that a railroad car placed near the traveled track of a highway endangers the travel along the same. It is an object which is apt to frighten horses traveling along the road, and if placed at a point in the highway where a slight deviation from the traveled track would endanger the safe passage of the carriage or wagon, a jury would be justified in attributing negligence to the party who placed it there. *Foshay v. Glen Haven*, 25 Wis., 288.

If it had been conclusively proved that the car on the street was the car of the Green Bay & Minnesota Railroad Company, and that it was placed there by the directions of the em-

ployees of that company, by those using the engine of the
defendant, it would make no difference as to the liability of
the defendant.    It is admitted that the switch track was con-
structed and owned by the defendant company, and if it
knowingly suffered another company to use it in an unau-
thorized way, it must answer for the consequences.    This
doctrine is fully sustained by the authorities cited by the
learned counsel for the respondent in his brief, as well as by
the following case in this court: *Stetler v. Railway Co.*, 46
Wis., 497, 503.    The fact that the car was visible to a person
driving along the highway was not conclusive evidence of
negligence on the part of the plaintiff or her son in attempt-
ing to pass the same.    The road was not so obstructed as to
prevent passing along the same without being crowded into
the ditch.    The evidence shows that there was nothing in the
character of the team the son was driving which should have
advised him that it was dangerous for him to attempt the
passage.    Others had passed in safety, and he would have
done so had not his horses taken a sudden fright when ap-
proaching the car.    The son did what it is probable a man of
ordinary prudence would do under like circumstances.    If
there was evidence which tended to show negligence on the
part of the plaintiff or her son, it clearly did not establish
the fact as a question of law, and the question was properly
submitted to the jury.    The view we have taken of the effect
of the evidence upon the question of the negligence of the
defendant, and the contributory negligence of the plaintiff
or her son, shows that the court did not commit any error
in refusing to nonsuit the plaintiff, nor in refusing to give the
first and second instructions asked by the defendant.    The
fifth instruction asked by the defendant was given in the
general charge, so far as the defendant was entitled to any
benefit thereof.

It is claimed by the learned counsel for the appellant that
the release given by the plaintiff pending the action was a

AUGUST TERM, 1882. 333

Bussian vs. The Milwaukee, Lake Shore & Western R'y Co.

complete defense to the action, and that there was no evidence in the case which would justify either the court or jury in setting it aside for fraud, misrepresentation, or any other cause. The learned counsel takes the ground that the release can only be impeached by a proceeding in equity, and that the submission of the question to the jury, if proper for any purpose, it should be held that it was simply for the purpose of aiding the court in the determination of the question of fraud, and that their verdict should have no more conclusive effect than a verdict of a jury upon any other issue of fact in an equitable action. We think the learned counsel is in error in regard to the practice. If the release was obtained by fraud or misrepresentation, then it is void, and that question could always be tried in a court at law before the adoption of the code. Chitty, in his work on pleadings, says that to a plea of release it is proper to reply that the release was obtained by fraud. 2 Chitty on Pl. (16th Am. ed.), 455; *Wild v. Williams*, 6 Mees. & W., 490; *Crook v. Stephen*, 5 Bing. N. C., 688; 1 Chitty on Pl., 692, 693, and note *d*.

The case of *Phillips v. Clagett*, 11 Mees. & W., 84, cited as holding a contrary doctrine, is not at all in conflict with this rule of pleading. In that case the question was as to a release given by a third person not a party to the action, but which had the effect of depriving the plaintiff of his right of action, and it was held that a court of law in such case would, upon the application of the plaintiff, either strike out the plea or refuse to permit it to be pleaded, if upon motion and proofs it clearly appeared that such release was given in fraud of the plaintiff's rights; but PARKE, Baron, in deciding the case, expressly says: "The courts have, in numerous cases which have been cited, properly exercised that jurisdiction by setting aside the plea of a release; it seems in some of the cases they have done more than that, for they have set aside the release itself. I apprehend that to have been *per incuriam*, for I cannot understand what authority

the court has to do that,— all they can do is not to allow the release to be pleaded. If such a release is a fraud in point of law upon one of the parties to it, the court would not interfere; *that is the proper subject for a replication;* they can only interfere when it is a fraud on third persons, and when a court of equity would clearly set aside the release, not merely as between the parties, one of whom releases, but where they would set it aside as against the defendant." The distinction made by the court is this: that where a release given by a party, not a party to the action at law, is pleaded, and such a release is a defense to the plaintiff's cause. of action by reason of his relations to the party executing the same, a court of law will not allow an issue to be made as to the validity of such release, because the parties who made it are not before the court, and according to the rules of law could not be made parties. In such case, if the plaintiff would avoid the effect of the release, he must go into a court of equity, where all the parties to it can be made parties to the action, and have the validity of the same tested in that way; or else, upon motion and a showing of the facts, he must show the court in which the action at law is pending and in which the release is pleaded, that it would be unjust to allow the defendant to avail himself of the release, and so prevent him from pleading the same, or, if it be pleaded, have the plea stricken from the record; but when the parties to the action are the only parties to the release, then it is proper to reply to the plea of release that the same was procured by fraud, misrepresentation, or undue influence, which is a species of fraud.

Without imputing any intentional wrong on the part of the defendant or its agent, who obtained the release of the plaintiff, we think it was obtained at such time and under such circumstances as fully justified the jury in finding that it was a fraud upon the plaintiff and it ought not to bind her. We are also of the opinion that the circuit court, sit-

ting as a court of equity, would have been justified in holding that the plaintiff should not be bound by it. It must be remembered as a fact having much weight in determining the validity of this release, that it was obtained by the defendant from the plaintiff after she had commenced her action, and employed counsel to protect her in her rights, and when she had no one to advise her except her daughter-in-law, who can hardly be considered a proper adviser; that the execution of it was urged upon her by her attending physician, acting on behalf of the defendant, when she desired a postponement until she could consult with her counsel in regard to the matter; when she was uninformed as to the amount of charges her attorneys would be entitled to demand of her for their services, and probably influenced by the statements of the defendant's agent that the defendant would probably defeat her in her action, and if they did not succeed in that her counsel would probably absorb whatever damages she might recover after an uncertain and protracted litigation. We think that no release obtained from the plaintiff after an action has been commenced and counsel employed, in the absence of the plaintiff's counsel, and without his consent or knowledge, should bind the party unless the utmost good faith is shown on the part of the defendant in obtaining the same. When a party has employed an attorney to prosecute an action, such attorney ought to be consulted if a compromise of such action be sought, and ordinarily it would be an act of bad faith on the part of the client and the opposite party to compromise the action without the consent of or without consulting such attorney.

What was said by the late chief justice in the case of *Watkins v. Brant*, 46 Wis., 419, is quite appropriate to the case at bar. In that case a settlement was made between two sisters in regard to their rights to certain real estate. The settlement was made in the presence of the attorney of the elder sister, the attorney of the younger not being present.

The circuit court had set aside the settlement on the ground of undue influence, and a misunderstanding on the part of the younger sister as to what the terms of the settlement were. In commenting on the impropriety of making a settlement without the presence of the attorney or husband of the younger sister, and under the management of the attorney of the elder, he says: "But he signally failed in professional duty to her whose conveyance of her patrimony he drew, without having ever seen her, not on her retainer, but on her grantee's. He knew of the litigation in the county court. He knew that counsel had there represented the rights of the woman brought to his office by his client. He knew of the judgment of that court in her favor. He may have brought himself to believe, he may have been right in believing, on behalf of his client, that the litigation which he mentioned might change the respective rights of the sisters. But while he gave the benefit of his professional learning and skill to the elder sister, he ought to have known and felt that the younger could not safely act in so grave a transaction, in secrecy from her husband, without the aid of equal professional learning and skill. It was against all professional ethics, against all propriety, to suffer that woman, without professional advice of her rights, without advising her of them himself, in the absence of the counsel who had maintained them, without the knowledge of her husband, without the counsel or sanction of any friend, alone, and in an apparent condition of weak health, to avoid the effect of the judgment of the county court; to surrender so large a proportion of her inheritance from her father, which her children, born and unborn, might in time look to inherit from her. It is not within the office of the profession to aid in such undue advantage. It was the plain professional duty of the gentleman who was the elder sister's attorney here, to have told these women, in these circumstances, that he would take no part in consummating the agreement between them,

Bussian vs. The Milwaukee, Lake Shore & Western R'y Co.

until the younger sister had taken proper professional advice, or had at least consulted her husband. No such transaction should ever be consummated as it were *ex parte* in a lawyer's office. This gentleman presumably acted without conscious bad faith. But the effect was the same. And this court holds what took place in his office to be equivalent to undue influence — adequate ground for avoiding a conveyance so executed." See, also, *Eagle Packet Co. v. Defries*, 94 Ill., 598; *Railroad Co. v. Doyle*, 18 Kan., 58.

The transaction by which this release was obtained, though not obtained in the office of the lawyer retained by the defendant, was, we think, obtained under circumstances fully as much to be deprecated as the transaction so severely condemned by the late learned chief justice in the opinion above quoted. See, also, *Howard v. Town of Osceola*, 22 Wis., 453. We think there was sufficient evidence to support the verdict of the jury finding that the release was no bar to the plaintiff's action. *Smith v. Mariner*, 5 Wis., 551; *Kelley v. Sheldon*, 8 Wis., 258.

We find no errors in the instructions given to the jury by the circuit court relating to the effect which should be given to the release, nor as to what facts or misrepresentations would avoid the same. The evidence, which was objected to by the defendant, we think was competent as bearing upon the validity of the release and the good faith of the defendant in obtaining the same. The case was fairly tried at the circuit court, and the judgment should stand.

*By the Court.* — The judgment of the circuit court is affirmed.