ST. LOUIS, I. M. & S. RY. CO. v. PHILLIPS et al.

(Circuit Court of Appeals, Eighth Circuit. January 2, 1895.)

No. 431.

1. APPEAL—HARMLESS ERROR—UNNECESSARY PARTY PLAINTIFF.
    A husband is not a necessary party to a suit for injuries sustained by his wife before marriage, where the state statute provided that (Mansf.

Dig. Ark. § 4933) "every action must be prosecuted in the name of the party in interest," but his joinder in the suit is harmless error, and his name can be stricken from the record even after appeal.

2. RELEASE—CONSIDERATION—FRAUD.

A railroad company procured a release from an injured passenger in full settlement of all claims for personal injuries and loss of property upon the payment of a sum less in amount than the value of the property destroyed. *Held,* in an action for damages, that the court properly refused to direct a verdict for the defendant, where there was evidence tending to show that the receipt was procured by fraud, and that at the time it was signed the plaintiff was incapable of transacting any important business or exercising an intelligent judgment on any subject.

3. CONTRACTS—VALIDITY—EFFECT OF INADEQUACY OF CONSIDERATION.

Mere inadequacy of consideration is not sufficient to establish fraud or mental incapacity to enter into a valid contract, but it is a circumstance which may be considered in connection with the other facts in the case.

4. TRIAL—INSTRUCTIONS—OPINION AS TO WEIGHT OF EVIDENCE.

In an action to recover damages for personal injuries the judge charged that the testimony of the medical experts who were called to testify as to the probable duration of the plaintiff's injuries was "entitled to great weight." *Held,* that no just exception could be taken to this remark, as it was a mere expression of the opinion of the judge as to the value of the evidence, and was not imposed on the jury as an obligatory rule of law for their guidance.

5. APPEAL—OBJECTIONS NOT RAISED BELOW—JURISDICTION.

In an action to recover damages for personal injuries and loss of property, the complaint alleged that a receipt in full settlement of all claims had been procured from the plaintiff by fraud, and at a time when she was incapable of transacting any business. *Held,* that the jurisdiction of the court in determining this issue, not having been challenged upon trial of the case (on the ground that the receipt could only be avoided by a suit in equity), could not thereafter be challenged in the circuit court of appeals. Railway Co. v. Harris, 63 Fed. 800, followed.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

George E. Dodge and B. S. Johnson filed brief for plaintiff in error.

Oscar D. Scott filed brief for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. This was an action commenced in the circuit court of the United States for the Eastern district of Arkansas by James M. Phillips and Tampa S. Phillips, husband and wife, against the St. Louis, Iron Mountain & Southern Railway Company, to recover damages for personal injuries and loss of money and personal baggage, sustained by Mrs. Phillips while traveling as a passenger on the defendant's road. At the time of the accident the plaintiff, Tampa S. Phillips, was a widow, and her name was then Tampa S. Griffith, but before this suit was brought she intermarried with her coplaintiff, James M. Phillips. The accident occurred at or near Hope, in Arkansas, on the morning of the 1st of March, 1893. The complaint alleges the accident was due to a defective track. The plaintiffs, anticipating that the defendant would plead in bar of the action a receipt acknowledging satisfaction of the demand signed by Mrs. Phillips, averred that the receipt was obtained from her by fraud, and at a time when, by reason of

her **injuries** and the stimulants and opiates administered to her, she "was in a frame of mind incapable of contracting." In addition to a general denial, the answer set up in bar of the action the receipt mentioned, which reads as follows:

"Accounts Payable.

"The Missouri Pacific Railway Co., to Mrs. T. S. Griffith, Dr.

Address Pilot Point, Texas.

"1893.

"In full settlement and satisfaction of all claims and demands against the St. L., Iron Mountain and Southern Ry., and the Missouri Pacific Railway Co., leased, operated, and independent lines of railway, for personal injuries received while a passenger of said companies was on pass. train 51, which was derailed, and I received scalp wound; and both hands badly bruised, and shoulder and neck wrenched and bruised, and grip, hat, and cloak lost, and all personal property, all of which occurred near Hope, Ark., Mch. 1, '93. And I do hereby fully and forever release, discharge, and acquit said companies from any and all claims of whatever kind or character I may have on account of or arising from said accident or injuries in consideration of the sum of forty dollars, $40.00.

"Received, Hope, Ark., March 1, 1893, of the Missouri Pacific Railway Company, forty dollars, in full of the above account.

"[Signed]                                                          T. S. Griffith."

There was a trial to a jury, and a verdict and judgment for the plaintiff, and the defendant sued out this writ of error. The following is a brief summary of the leading facts which the plaintiff's testimony tended to establish: When the train was running rapidly, the chair car in which Mrs. Phillips was riding was derailed, and thrown over on its side. At the time of the accident Mrs. Phillips was in the wash room, making her toilet. She was thrown across the room, and fell to the floor, and was rendered insensible by the violence of the shock. The water tank in the wash room upset, and poured its contents over her, and to this circumstance she probably owes her life, for when the car turned over it took fire and burned up, and when she was revived by the water the room was full of smoke, and the fire was near enough to her to be felt. The side was now the top of the car, and her only means of escape was to break through the window on the top of the car, which, after repeated efforts, she succeeded in doing, when her cries for help were heard, and she was taken out. She was bruised and cut about the head, face, and hands, and her wounds were bleeding. She was taken to a house in the town near where the accident occurred, where she was waited upon by physicians, who dressed her wounds, and administered the usual remedies to allay pain and nervousness. She remained at the house until evening, when she was taken to the station, and put on a car to resume her journey to Texas. She was in pain, and was suffering from nervous prostration, and was more or less under the influence of the stimulants and narcotics she had taken. A witness who saw her in the car at this time testifies as follows: "She looked to be pretty well used up. I noticed her on the train. She had her head bandaged up, and both hands and arms bandaged up, and she looked to be kind of dazed or unconcerned about anything; seemed as though she was suffering, and she did say she was suffering;" and the same

witness says that he saw her the next morning, and "her face was discolored on one side, very much swollen, and looked inflamed, and one eye closed." She had two hand satchels, which, with their contents, valued at $70, were burned, and her money, amounting to $27, and her railroad ticket, shared the same fate. After she was put on the car in the evening to resume her journey, the door of that car was locked, and she was then approached by two or three of the defendant's agents, and what then took place is thus told by her in answer to questions propounded by the defendant:

"Q. When these gentlemen called on you to present this matter that you have signed [the receipt], did you read it? A. Not a thing. He spoke to me, as well as I remember, in this way. He says, 'You have lost your baggage; you have lost your money,' and I told him that I had, and he talked about it, and he pulled out this money and told me to sign my name; that I had received the amount of $40.00. Q. Did he read this over to you? A. No, sir; he didn't read anything to me at all. Q. Did you read it yourself? A. No, sir, not a thing. I would not have no more known that I signed to a blank than I did to that, if that is it. Q. Didn't you know you were signing a receipt for that money? A. Yes, sir. I knew I was signing a receipt for the money, and it was very kind to give me something to go home on. Q. Was there anything said about that money being given to you to go home on? A. Nothing, only they said, 'You have no money to go on,' and I said, 'No,' and they insisted that I stay over, but I got a telegram that my father was very sick, and all I cared for was to get home. He was very ill, and my care was to get home, and I thought they were helping me home. Q. What was your condition, if you can describe it, there at the time,—mental condition? A. I do not know, sir. I couldn't tell you how I felt, but I was easy, indolent; I didn't care; was indifferent, just so I could get home; and I didn't seem to hardly be conscious of things around me."

The first error assigned is that the husband of Mrs. Phillips was an improper party to the action. It is undoubtedly true that under the Arkansas Code the husband of Mrs. Phillips was an unnecessary party to the suit. His name might have been stricken out of the complaint at any time, and can be stricken out of the record now, but its presence is not injurious to the defendant, and is a harmless error.

The court rightfully refused to give a peremptory instruction to the jury to find a verdict for the defendant. There was evidence tending to show that Mrs. Phillips' signature to the receipt was procured by fraud, and that at the time she signed it she was in a state of mind that rendered her incapable of transacting any important business, or forming or exercising a deliberate or intelligent judgment on any subject. There was a serious conflict in the evidence on these issues, but it was the province of the jury to say whether, and how far, the evidence was to be believed. When, by giving credit to the plaintiff's evidence, and discrediting that of the defendant, the plaintiff's case is made out, the court cannot withdraw the case from the consideration of the jury. It is the province of the jury to pass upon the veracity of witnesses, and, when there is a conflict, to determine whom they will believe. Railroad Co. v. Teeter, 11 C. C. A. 332, 63 Fed. 527; Railway Co. v. Sharp, 11 C. C. A. 337, 63 Fed. 532, and cases there cited.

The money and property of the plaintiff which was actually burned up exceeded in value more than double the sum paid to her by the defendant's agents, saying nothing of the personal injuries she sus-

tained, which were serious, and some of them probably permanent. While it is true that mere inadequacy of consideration is not sufficient to establish fraud or mental incapacity to enter into a valid contract, it is a circumstance which may be considered in connection with the other facts in the case. The weight to be given to it depends very largely on the degree of the inadequacy of consideration. The want of consideration may be so gross as to go a great way towards proving fraud or want of sufficient intelligence to make a contract. In Beller v. Jones, 22 Ark. 92, 99, the court say:

"No evidence was introduced by Jones so effective, none could be introduced more convincing, to show mental derangement or want of natural sense, as his agreement which is charged by him and admitted by Beller to have been made."

And when it is shown that one has a weak understanding, or from any cause is in a mental condition which renders him liable to imposition, his contract will be held voidable if the nature of the act or contract justifies the conclusion that the party has not exercised a deliberate judgment, but has been imposed upon, circumvented, or overcome by cunning, artifice, or undue influence. 1 Story, Eq. Jur. § 238. It is impossible to define with exactness the degree of mental weakness or unsoundness of mind that renders a party incapable of entering into a contract, and this case does not require any extensive discussion of the subject. Against the consequence of mistaken judgment or mere imprudence and folly on the part of one making a contract, the law will not relieve. Probably as good a statement of the general rule as the books contain is found in Kelley's Heirs v. McGuire, 15 Ark. 555, 603, where the court say:

"If a person, although not positively non compos or insane, is yet of such great weakness of mind as to be unable to guard himself against imposition, or to resist importunity or undue influence, a contract made by him under such circumstances will be set aside."

Vide Kilgore v. Cross, 1 McCrary, 144, 1 Fed. 578, and cases there cited.

No just exceptions can be taken to the charge of the court submitting these issues to the jury, and upon the evidence in the record we cannot disturb their verdict. Exceptions were taken to the remark of the judge that the testimony of the medical experts who were called to testify as to the probable duration of the plaintiff's injuries was "entitled to great weight." Widely different views are entertained as to the value of such evidence. The remark excepted to was a mere expression of the trial judge's opinion of its value, and was not imposed on the jury as an obligatory rule of law for their guidance. On the contrary, in the same connection the jury were told:

"But at last you are not compelled to take it as true, if you believe that it is improper, and if you believe that it is untrue. You, as jurors, are to weigh that testimony also as you weigh other testimony. * * * You are the sole judges of the testimony as to the whole case, and of the credit to be given to the testimony of any or all of the witnesses. * * * In regard to the permanency of the injury, the court will say to you that you should be careful in estimating that. * * * You are not to speculate upon that, but to be governed by the testimony in the case, and all the testimony in the case."

It is urged that the plaintiff cannot, in this action, avoid the receipt on the grounds relied upon, but that it can only be avoided by a bill in equity for that purpose. The complaint anticipated the defense based on the receipt, and alleged that it was procured from the plaintiff by fraud, and at a time when she was incapable of transacting any business. The defendant took issue on this allegation. The jurisdiction of the court to determine this issue was not challenged in the trial court, and cannot, therefore, be raised in this court. We have recently had occasion to consider this question (Railway Co. v. Harris, 63 Fed. 800), and content ourselves with referring to what was there said without repeating it here. We are not to be understood as intimating that, if the defendant had interposed a timely objection to the jurisdiction of the lower court to try this issue, the objection would have been of any avail.

Finding no error in the record, the judgment of the circuit court is affirmed.