SUSAN E. KELLY, as Administratrix of the Estate of JOHN W. KELLY, deceased, Appellee, v. THE CHICAGO ROCK ISLAND and PACIFIC RAILWAY COMPANY, Appellant.

**Evidence:** JUDICIAL RECORD: ADMISSIBILITY OF ENTIRE RECORD.  A rail-
1  way company having pleaded an alleged settlement for the death of an employé with the administratrix of the deceased's estate, and offered in evidence so much of the court records as related to an approval of the settlement, the plaintiff was entitled to offer the balance of the record relating to the disapproval of the settlement and the approval of a subsequent report, in which she alleged that the settlement was procured by the fraud of defendant's agents; and the same was not subject to the objection that it was a self-serving declaration, or that a judicial record is not admissible as against one who was not a party thereto.

**Instructions:** MARSHALING THE EVIDENCE.  An instruction which cor-
2  rectly states the rule of law applicable and pertinent to the matter to be determined is sufficient; it should not attempt to marshal the evidence or by special mention to give undue prominence to any particular phase of the evidence, except possibly in the case of some unfair argument or other unusual circumstance suggesting prejudice.

**Railways:** PERSONAL INJURY: RELEASE FROM LIABILITY: FRAUD.  A
3  settlement and release from liability obtained from one, who, by reason of inexperience, bodily or mental infirmity, or from a lack of independent counsel is not upon an equal footing will be scrutinized by the courts with care, and when so obtained is void.  In

the instant case the manner of procuring the release from liability of a railway company for the death of an employé is held to authorize a finding of fraud.

**Same:** *res-judicata.* Approval by the court of an administrator's settlement for the negligent death of his intestate, when the settlement was fraudulently procured, is not an adjudication of the question of damages and will not preclude the administrator, in a subsequent action for the death, from relying upon the fraud.

*Appeal from Linn District Court.*— Hon. Wm. G. Thompson, Judge.

Thursday, January 16, 1908.

Rehearing Denied, Monday, April 13, 1908.

Action at law to recover damages for the death of the plaintiff's intestate. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Carroll Wright, J. L. Parrish,* and *Grimm, Trewin & Moffit,* for appellant.

*Barnes & Chamberlain* and *Jamison & Smith,* for appellee.

Weaver, J.— John W. Kelly, a brakeman in the employ of the defendant company, was killed while in the line of his duty in such service by the explosion of a locomotive boiler. He left no will and no children, and his estate descended in equal shares to his wife and mother. The widow, having been appointed administratrix of his estate, brings this action, alleging that her husband's death was chargeable to the negligence of the defendant, and demanding a recovery of damages in the sum of $10,000. She further alleges that within a very short time after her husband's death, and while she was still suffering great mental and nervous depression and weakness by reason of her sudden and great affliction,

and in consequent unfit condition to transact business, she was approached by defendant's claim agent, one Albright, who represented that he would pay her $3,000 in settlement of her own claim for the death of her husband, and, in addition thereto, would settle with the mother of the deceased, leaving the plaintiff to have and hold as her own said sum of $3,000, and that she, believing and relying upon said representations and promises, accepted the offer.  She further says that, upon expressing her willingness to settle upon the terms proposed, the claim agent, taking advantage of her weakness and unfitness for business, presented a receipt or voucher, which she signed, believing it to be a receipt in accordance with the proposed terms of settlement, but, as she now learns, it purports to be a receipt in full by her as administratrix of her husband's estate, and that defendant and . its agents have neglected and failed to settle with the mother of the deceased, or to pay her anything upon her claim for the death of her son.  She therefore avers that said settlement and receipt were obtained by fraud, and are of no validity.  The defendant admits the death of the said John W. Kelly by accident while in its service, and alleges full settlement on account thereof with plaintiff as administratrix of his estate, the approval of such settlement by the district court where the administration was pending, and the acceptance by plaintiff of the sum of $3,000 in full of all claims on account of the death of the intestate.  It denies being in any manner negligent with respect to said accident, and denies all allegations of fraud and imposition in the procurement of the alleged settlement.  The jury having returned a verdict in plaintiff's favor for $3,000, judgment was entered thereon, and defendant appeals.

I.  As already stated, the defendant in its answer sets up the alleged written stipulation of settlement with the plaintiff and her receipt of $3,000 in discharge of all claims against the defendant.  On the trial, plaintiff having given testimony

1. EVIDENCE: judicial record: admissibility of entire record.

on her own behalf tending to show that the settlement and receipt were obtained by fraud and deception, defendant's counsel in cross-examination called her attention to the voucher or receipt which she had signed, to the order of the court approving the settlement, and to a report to the court purporting to have been filed by her containing matter apparently recognizing the validity of said settlement. Thereafter the plaintiff introduced in evidence over the defendant's objection the record of an order by the district court disapproving said report, and approving a substituted report, in which she alleged that said former report and the application for approval of the alleged settlement had been made by the agents and attorneys for the railway company, who procured her signature thereto without her understanding the true nature and effect thereof. Error is assigned upon the admission of these papers and records in evidence. The objection is grounded upon the general rule, which excludes self-serving declarations of a party, and that records of judicial proceedings are not admissible as against one who was not a party thereto. The soundness of these general propositions cannot be disputed, but their applicability to the present case is not apparent. The defendant having pleaded and put in evidence the alleged settlement and its approval by the court, together with so much of the probate record as had any tendency to support its defense, we think that, upon very familiar principles, it was the right of the plaintiff to offer the remainder of the same record. Moreover, defendant was claiming that the approval of the settlement had the effect of a prior adjudication of rights involved in this action, and in our judgment the entire record affecting the claim in suit was material evidence for the consideration of the jury.

II. Upon the measure of plaintiff's damages, if found

**2. INSTRUCTIONS: marshalling the evidence.** entitled to recover, the trial court charged the jury substantially in the language approved by this court in *Lowe v. Railroad Co.,* 89 Iowa, 433.

Counsel for appellant concede the correctness of the instructions; but assign error on the court's refusal of the request for an additional instruction framed in part after the manner approved in *Spaulding v. Railroad Co.*, 98 Iowa, 219, to the effect that in estimating the damages to the decedent's estate the jury should allow nothing for his pain and suffering or by way of exemplary damages, but should take into consideration his age at the time of his death, his ability, if any, to earn money, his expenditures, his accumulation of property and other circumstances affording any aid in establishing the present value of his life to his estate. The instruction asked could properly have been given, but we are not prepared to hold that its refusal under the circumstances of the case constitutes prejudicial error. The court did very fairly and fully give to the jury the general rule that the loss or damage which plaintiff was entitled to recover, if the issues were found in her favor, was the loss or damage occasioned to the estate of the decedent by his premature death, taking into consideration his age, health, occupation, earnings, his ability to earn, and other matters in evidence tending to show the extent of such loss, and that, in arriving at such result, consideration should be given to the fact that the sum allowed was to be paid at once, and not at the end of the deceased's expectancy of life. The requested instruction added essentially nothing to this rule, except to direct the attention of the jury to certain features of the evidence bearing upon the question of damages. It is not often practicable, and still less often advisable, for the trial court in framing its instructions to make specific mention of the items of evidence bearing upon any given issue. The office of an instruction is to state the rule of law applicable and pertinent to the matter to be determined, and not to marshal the evidence, or by special mention to give undue prominence to any particular phase or feature of the fact case-made by either party to the controversy. Nor can the court be expected to give express or special warning against every possible mis-

take or misapprehension into which the jury may fall in the discharge of its functions. Something must be left to the intelligent apprehension and application by the jurors themselves of the general rules stated in the court's instructions. It may, and does occasionally, happen that some unfairness in argument of counsel or some other circumstance out of the ordinary arising in the course of the trial suggests to the court the propriety of guarding against prejudice therefrom to either party by an instruction covering the specific matter thus imported into the case. When and to what extent instruction of this nature shall be given rests very largely in the sound and impartial discretion of the court. The charge given in the present case announces the correct rule in terms which in essence and effect cover the thought of the requested instruction in all its essential features; and we see nothing in the record to indicate possible prejudice to appellant in the refusal of the more specific and detailed direction.

III. While not yielding the other points mentioned, counsel for appellant very properly say that " the principal question in this case is whether the plaintiff and defendant had made a valid settlement of the case or action in controversy." To that question we now turn our attention. There was evidence

3. RAILWAYS: personal injury: release from liability: fraud.

from which the jury could find the truth of the following state of facts: Within a very few days after the accident, Albright, the railway company's claim agent, called on the widow for the purpose of procuring a settlement of the company's alleged liability for the death of her husband. In furtherance of that purpose, he dissuaded her from seeking the advice of counsel, and told her that, if she did so, she would be robbed, and directed or took her to the office of the attorneys for the railway company at Cedar Rapids, where an application was prepared for her appointment as administratrix and such appointment secured. At the outset Albright offered plaintiff $2,600, which offer, after several interviews, he raised to $3,000. Meanwhile plaintiff had been

informed that, under the statute, she would succeed to but one-half of her husband's estate, and that his mother would be entitled to the other half.   On being again approached for a settlement, she told Albright that she would not take $3,000 if she had to divide with her mother-in-law, and he assured her that the sum offered was for herself alone, and that he would see the mother and settle with her personally. Believing this promise and representation, plaintiff accepted the offer.   During the period covered by these negotiations plaintiff was suffering much in mind from her affliction, and was more or less broken physically.   In signing a receipt for the money paid her she did not know or understand that she was executing it as administratrix, but supposed it to be a release or discharge of her individual claim.   Her eyes being swollen, and being sick and nervous, plaintiff could not read the paper, but was assured by Albright that it accorded in all respects with their agreement.   The receipt having been obtained, a report was made to the district court which was then in session, and an order of approval secured; this service being performed by the attorneys for the company. Another report prepared by the same attorneys, and, recognizing the validity of the settlement with the company, was filed at a later date in the probate proceedings, and was subsequently disapproved by the court and withdrawn by the plaintiff.   It was not until after the filing of this last-mentioned report that plaintiff discovered the scope and effect of the settlement which had been made, and of the proceedings which had been had with reference thereto, when she at once repudiated the transaction.   Many of the matters which we have here stated are without substantial dispute; while others are vigorously denied.

Upon the method employed by Albright to secure the alleged settlement, his own testimony as a witness affords the best possible characterization.   He says:

I knew that Mr. Kelley had been killed in the explosion of the engine, the blowing up of which I had investigated,

and in my judgment it was a claim that ought to be adjusted. In a general way, I had investigated and knew of the condition and circumstances by which he had lost his life before I advised Mrs. Kelley to go to the company's attorneys. And it looked to me that it was a case where it was the proper thing for me to do as adjuster to adjust the claim. When Mrs. Kelley came to me, and wanted his watch and wages and such things, I suggested to her that she would have to have an administratrix, and that I would take her up and introduce her to the company's attorneys, and they could attend to the business as well as any other attorneys. She did not ask me to recommend her to any attorneys. I did that of my own motion. Yes; I had an object in recommending the company's attorneys. I thought that she would be in good hands. I was interested as to her going to see lawyers, and was interested in keeping her out of the hands of lawyers. And it was my intention not to allow her to consult any lawyers, except the company's, if I could avoid it, until after I had brought about this settlement.

With this illuminating admission in evidence, it is not at all strange that the jury should believe the story of the plaintiff concerning the imposition alleged to have been practiced upon her by the appellant's agent, and we have no inclination to disturb their finding in that respect. While it is and should always be the policy of the courts to encourage the amicable settlement of all controversies, it is even more a matter of good policy and good morals to stamp the law's disapproval upon settlements which bear the taint of fraud and undue advantage. *Coles v. Railroad Co.*, 124 Iowa, 48; *Rauen v. Insurance Co.*, 129 Iowa, 725; *Bussian v. Railway Co.*, 56 Wis. 325 (14 N. W. 452); *Bliss v. Railroad Co.*, 160 Mass. 447 (36 N. E. 65, 39 Am. St. Rep. 504); *Railroad Co. v. Lewis*, 109 Ill. 120; *Mullen v. Railroad Co.*, 127 Mass. 86 (34 Am. Rep. 349); *Eagle Packet Co. v. De Friez*, 94 Ill. 598 (34 Am. Rep. 245); *Peterson v. Railroad Co.*, 38 Minn. 511 (39 N. W. 485); *Stone v. Railroad Co.*, 66 Mich. 76 (33 N. W. 24); *McLean v. Insurance Co.*, 100 Ind. 127 (50 Am. Rep. 779); *Lusted v.*

*Railroad Co.,* 71 Wis. 391 (36 N. W. 857); *Schultz v. Railroad Co.,* 44 Wis. 638; *Watkins v. Brant,* 46 Wis. 419 (1 N. W. 82); *Railroad Co. v. Doyle,* 18 Kan. 58; *Sheanon v. Insurance Co.,* 83 Wis. 507 (53 N. W. 878); *Flummerfelt v. Flummerfelt,* 51 N. J. Eq. 432 (26 Atl. 857); *Troxall v. Silverthorn,* 45 N. J. Eq. 320 (12 Atl. 614); *Lord v. Association,* 89 Wis. 19 (61 N. W. 293, 26 L. R. A. 741, 46 Am. St. Rep. 815); *Railroad Co. v. Fowler,* 201 Ill. 152 (66 N. E. 394, 94 Am. St. Rep. 158); *Girard v. Car Wheel Co.,* 123 Mo. 358 (27 S. W. 648, 25 L. R. A. 514, 45 Am. St. Rep. 556); *Railroad Co. v. Harris* (Tex. Civ. App) 65 S. W. 885; *Railroad Co. v. Brown* (Tex. Civ. App.) 69 S. W. 651; *Light Co. v. Rombold,* 68 Neb. 54 (93 N. W. 966); *Railroad v. Green* (C. C.), 114 Fed. 676; *Davenport v. Lumber Co.,* 112 La. 943 (36 South. 812); *Clayton v. Traction Co.,* 204 Pa. 536 (54 Atl. 332); *Railroad Co. v. Harris,* 12 C. C. A. 598 (63 Fed. 800); *Railroad Co. v. Phillips,* 13 C. C. A. 315 (66 Fed. 35); *Butler v. Railroad Co.,* 88 Ga. 594 (15 S. E. 668); *Albrecht v. Railroad Co.,* 94 Wis. 403 (69 N. W. 63); *Railroad Co. v. Harris,* 158 U. S. 326 (15 Sup. Ct.. 843, 39 L. Ed. 1003); *Vautrain v. Railroad Co.,* 8 Mo. App. 538; *Railroad Co. v. Uhter,* 212 Ill. 174 (72 N. E. 195); *Coal Co. v. Buzis,* 213 Ill. 341 (72 N. E. 1060).

Many of the foregoing cases are quite parallel in facts with the case at bar, and all of them emphasize and enforce the proposition that a compromise or release of a right of action obtained by misrepresentation, undue influence, or fraud will be held for naught, and a settlement obtained from one who, by reason of inexperience or weakness of body or mind, or of lack of independent counsel and advice, is not in condition to deal on equal terms with the party seeking the release, will be scrutinized with jealous care, and any contract or agreement thus unfairly obtained will be unhesitatingly avoided.    The conduct of the claim agent in the present case by persuading plaintiff of his desire to serve her interests, in exciting in her mind distrust of independent legal advice,

and actively maneuvering to keep her from consulting other counsel, in introducing her to the counsel of the railway company, and in kindly taking charge of the matter of her appointment as administratrix, and in other methods impressing her with his spirit of philanthropic disinterestedness, was well calculated to disarm the suspicions of an inexperienced woman still suffering from the shock of her recent bereavement, and bring her to a frame of mind in which he could obtain from her a settlement favorable to his employer. If, under such circumstances, he made use of the advantage thus shrewdly obtained to deceive the plaintiff as to the true nature of the settlement she was making and of the paper she was being asked to execute — and of this there was ample evidence to carry the question to the jury — a defense based upon such settlement cannot avail to defeat her recovery in this action.

IV. It is argued, however, that the approval by the court of the alleged settlement constitutes an adjudication between plaintiff and defendant, and therefore the question

4. SAME: *res judicata.* of fraud cannot be considered in this proceeding. In our judgment the proposition is untenable. There was no action pending to which these persons were parties. No issue of law or fact had been joined between them upon which the court undertook to pass. The order of approval was in no sense of the word a judgment for a recovery of damages. At common law an administrator had an undoubted right to compromise claims in favor of the estate upon which he was administering. Our statute does not take away that right, but the administrator is an officer or trustee under the direction of the court and his acts are ordinarily subject to its approval. The chief office of the approval of a compromise or settlement is the protection of the administrator against personal liability to the estate on account thereof. Referring to a statute providing for an order of the probate court for the compromise of claims, the New York court has said: " The object of the statute was

not to confer upon administrators powers which otherwise they would not possess, but to afford them additional protection when acting in good faith in the exercise of their common-law power. Although they could compromise a claim or compound a debt without the aid of the statute, still they might, perhaps, be held responsible for any serious error in judgment in so doing. The act in question enables them to obtain the sanction of the surrogate in addition to their own, and this affords them additional protection if their conduct be fair and honest." *Chouteau v. Suydan*, 21 N. Y. 180. See, also, *Wyman's Appeal*, 13 N. H. 18. Such approval cannot operate as a condonation of any fraud on part of a debtor in negotiating the compromise. *Leigh v. Holloway*, 8 Ves. Jr. 213. We are cited to no authority giving color of support to the appellant's theory of prior adjudication, and after diligent search, we have found none to that effect.

There is no reversible error in the record, and the judgment of the district court is *affirmed.*