THE CHICAGO CITY RAILWAY COMPANY

*v.*

HENRY UHTER.

*Opinion filed October 24, 1904.*

1. RELEASE—*rule as to impeaching release for fraud.* For fraud consisting of misrepresentation as to collateral matters or as to the nature and value of the consideration for the release, resort must be had to equity for relief; but if the fraud is inherent in the execution of the instrument, such as misreading, substitution of papers and deception as to the character of the instrument, the release may be attacked in an action at law.

2. SAME—*whether release was fairly obtained is for the jury.* If there is any evidence tending to show that plaintiff signed a release of damages because of defendant's fraudulent representation that it was a receipt for money to reimburse plaintiff for what he had paid for physician's services, the question is one of fact for the jury.

3. EVIDENCE—*what should be excluded as hearsay.* In anticipation of the defense that plaintiff's ailments existed prior to the injury for which he seeks to recover, it is improper to permit plaintiff's witnesses to state, on direct examination, whether they had ever heard the plaintiff was afflicted with such ailments before his injury.

4. SAME—*what not a waiver of exceptions to evidence.* After the court has overruled defendant's exceptions to the admission of a certain class of evidence, the defendant may introduce evidence of the same class to meet that of the plaintiff without waiving his right to claim the benefit of his exceptions on appeal.

5. SAME—*when fact that defendant's servants were arrested cannot be shown.* In an action against a street car company for negligence, there being no charge of willful or wanton injury, it is improper to show, upon the examination of the policeman who witnessed the accident, that he arrested the motorman and conductor in charge of the car several hours after the accident.

6. SAME—*what essential to constitute res gestæ.* An act or declaration can be considered as a part of the *res gestæ* only when it illustrates, explains or interprets other parts of the transaction of which it is itself a part.

7. SAME—*what improper cross-examination for impeaching witness.* It is not proper, for the purpose of impeaching a witness, to cross-examine him as to his domestic affairs and private relations, since the only matters with which the jury are concerned are those relating to his truthfulness.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an action on the case, brought on May 18, 1895, by the appellee against the appellant company to recover damages for personal injuries, claimed to have been received by appellee on December 31, 1894, by being struck by one of appellant's electric street railway cars at or near the intersection of Sixty-third street and Madison avenue in the city of Chicago. The *ad damnum* was laid at $25,000.00. The plea of the general issue was filed, and the case has been tried three times. In the first two trials the juries were unable to agree. The last jury rendered a verdict in favor of appellee for 12,500.00, of which the trial judge required a *remittitur* of $8500.00, and judgment was entered against appellant for $4000.00. Upon appeal to the Appellate Court, the latter judgment has been affirmed, and the present appeal is prosecuted from such judgment of affirmance.

WILLIAM J. HYNES, and WATSON J. FERRY, (MASON B. STARRING, of counsel,) for appellant.

GEORGE W. PLUMMER, WHARTON PLUMMER, and S. C. DWYER, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In the present action to recover damages on account of personal injuries the usual questions, whether or not the plaintiff below was in the exercise of due care for his own safety when the accident occurred, and whether or not the defendant was guilty of such negligence as caused the accident, were not the only questions involved upon the trial of the case, but there was also presented for the determination of the jury, upon the trial below, the question whether or not

a certain release, executed by the appellee some five days af-, ter the accident occurred, was valid and binding upon the appellee. The release was in writing, and was signed by the appellee by his mark, and was witnessed by two witnesses, one of whom was his daughter, and the other of whom was his grand-daughter. The instrument by its terms released the appellant from all demands, and especially from any claim on account of the accident in question, and recited that it was in consideration of $35.00, paid to the appellee, and of an agreement to send a certain physician to attend upon him, such physician not to make more than four visits.

There are two kinds of fraud, for which such a release, as was here introduced in evidence, may be impeached. Where a party, signing such an instrument, is induced to execute it by a misrepresentation or fraudulent representations as to collateral matters, or as to the nature and value of the consideration, resort must be had to a court of equity for relief. In such cases, the party fully understands what he is signing, and is aware of the nature and character of the instrument executed by him, but is deceived by fraudulent representations as to facts outside of the instrument itself. There is another kind of fraud, however, for which a release may be impeached, and that is fraud, which inheres in the execution of the instrument; that is to say, where the signer of the instrument is deceived into signing it by the belief that he is signing something other than that which he does really sign. Cases of this kind arise where the instrument is misread to the party signing, or where there is a surreptitious substitution of one paper for another, or where, by some trick or device, a party is made to sign an instrument which he did not intend to execute; and, where this is the case, the nature of the instrument signed is not fully understood by the party signing it. Where fraud of the latter kind exists, that is, fraud in the execution of the instrument itself, it may be shown in an action at law. (*Papke* v. *Hammond Co.* 192 Ill. 631,).

In the case at bar, it was charged by the appellee that, when he signed the instrument introduced in evidence as a release, he did not know that he was signing such a release, but supposed he was signing a receipt for money, which he had paid out to a doctor for medical services in dressing his wounds and caring for his injuries. The evidence tends to show that the appellee, or some member of his family, had paid out about $30.00 to a doctor for these services when the representative of the appellant company approached him with the view of securing the release in question, and he supposed, when he executed the release, that he was merely executing a receipt for such money, paid out by him to the physician, and returned to him by the appellant's representative. There was evidence in the record, tending to establish appellee's contention that he did not execute the release, and that he signed it under the belief that he was signing a receipt. Whether or not such a release was obtained unfairly is a question of fact for the jury. (*Illinois Central Railroad Co.* v. *Welch,* 52 Ill. 183; *Chicago, Rock Island and Pacific Railway Co.* v. *Lewis,* 109 id. 120; *National Syrup Co.* v. *Carlson,* 155 id. 210; *Indiana, Decatur and Western Railway Co.* v. *Fowler,* 201 id. 152).

But while it is true that sufficient evidence was introduced, attacking the validity of the release, to justify the submission of the question of its execution to the jury, yet we are of the opinion that serious errors were committed by the trial court in the admission of testimony, bearing upon other questions presented by the record. Even if the release was not understandingly executed as such by the appellee, yet the questions remained whether or not the negligence of the appellant company caused the injury while appellee was in the exercise of due care, and whether or not the injuries suffered by him were such as they were claimed to be, and were of the character sought to be established by appellee's testimony.

*First*—One of the questions in the case was, whether certain ailments of the appellee, to which many of his witnesses

212–12

testified, and certain sufferings, endured by him after he received the injuries in question, were really caused by such injuries, or existed before the accident, or were due to causes operating before the accident occurred. For instance, the medical testimony showed that after the accident appellee showed signs of rheumatism, and rupture, and indications of serious fractures in his limbs. Undoubtedly the injury was a very serious one, and the appellee at the time of its occurrence was an old man seventy years of age. Whether the physical ailments, suffered by the appellee after the accident, were really caused by it or not, was a question about which the testimony was conflicting.

Appellant introduced testimony upon the trial, tending to show that many of the physical troubles, which appellee's witnesses attributed to the accident, had existed prior thereto. But before such testimony was introduced upon the last trial by the appellant, the appellee, evidently in anticipation that such testimony would be produced when the appellant should begin to make its defense, introduced much of his own testimony upon this subject, not in rebuttal, but as a part of his original case.

Appellee placed upon the witness stand a witness by the name of Hull, and a part of his examination was as follows: "Q. Did you ever hear of his having rheumatism? (Objected to by counsel for defendant as incompetent; objection overruled; exception by defendant). A. No, I never did. Q. Did you ever hear of him having a rupture of any kind, or know of his having any? (Objected to by counsel for defendant for the same reason; objection overruled; exception by defendant). A. No, sir. * * * Q. Did you ever hear of him being kicked by a horse? (By counsel for appellant, the same objection as before). * * * A. Before this injury, I never saw him walk lame." Again, a witness by the name of Love was put upon the stand by the appellee, and the following is a part of his testimony: "Q. Did you ever hear of his being ruptured, having a rupture? (Objected to

by counsel for defendant as incompetent; objection over-
ruled; exception by defendant). A. No, sir. Q. Did you
ever hear of anything being the matter with him until the
time of this accident? (Same objection by defendant; ob-
jection overruled; exception by defendant). A. No, I think
not. He cut his foot one time in the woods. I heard that
years ago; that is all I ever heard." Appellee in rebuttal
also placed on the witness stand a witness by the name of
Northrup, and the following is a part of his testimony: "Q.
Did you hear of his having his arm broken? (Objected to
by counsel for defendant as incompetent; objection over-
ruled; exception by defendant). A. No, sir."

This evidence should not have been admitted, because it
was mere hearsay, and was, therefore, prejudicial to the ap-
pellant company. One of its defenses as to the character and
extent of appellee's injuries was that, prior to the accident in
question, he had met with a series of other accidents, in one
of which the arm, which he claimed to have been injured in
the accident in question, was fractured; in another of which
his leg was broken, and that he had sustained a rupture; and
in another of which he had cut his foot, and that he had also
been afflicted with rheumatism in the arm claimed to have
been injured by the present accident. These witnesses were
not asked to state what they knew as to the character of the
appellee's injuries or ailments prior to the accident, but as to
what they had heard in reference thereto.

In *Treschman* v. *Treschman,* 28 Ind. App. 206, which
was an action by an infant against her step-mother for per-
sonal injuries, evidence that it was the general repute in the
neighborhood that the weakness of the plaintiff's eyes was
caused from measles, and that plaintiff's mother told witness
in the presence of plaintiff, then two years old, that plaintiff
had had the measles, and that it had caused her eyes to be-
come weak, was properly rejected as hearsay; and the court
there said: "The court excluded certain offered testimony
of a witness to the effect that it was the general repute in the

neighborhood that the weakness of appellee's eyes was caused from measles; also by the same witness that the appellee's mother had told witness that appellee's eyes were weak from measles; also the offered testimony of a witness that appellee's mother told witness in the presence of appellee, then two years old, that the appellee had the measles, and that it had caused her eyes to become weak. As to part of this offered testimony, counsel for appellant have given no sufficient reason why it should be excepted from the general rule excluding hearsay evidence. What the appellee's mother told the witnesses was certainly properly excluded. It is true that hearsay evidence is admissible in certain cases. But it is admitted only through necessity, as to prove pedigree, age, place of birth and the like. But it is not admissible to prove the existence of a physical fact. Whether or not appellee's eyes were weak from some prior disease could be established by positive testimony." So, in the case at bar, whether or not appellee's ailments in the nature of rheumatism, and rupture, and fractures were due to the accident in question or to prior injuries or sickness could be established by positive testimony without the resort to such hearsay evidence.

*Second*—It is claimed, however, by the appellee, that, when the appellant introduced its testimony to sustain its defense, it asked some of its witnesses questions of the same character; that is to say, whether or not they had ever heard that the appellee had suffered from any of the disabilities or ailments mentioned prior to the accident. It seems to be contended that, because the appellant, following the ruling of the trial court in favor of the plaintiff below upon this subject, introduced in its own behalf such hearsay evidence, it thereby waived the right to question the correctness of the trial court's ruling upon this subject upon appeal in a court of review. Such is not the law.

In *Richardson* v. *Webster City*, 111 Iowa, 430, the trial court had ruled that certain questions, asked of the witnesses as to the amount of damage suffered by the plaintiff, were

improper as calling for the conclusions of the witnesses, and thereby usurping the province of the jury, and it was claimed by counsel for plaintiff in the reviewing court, that the defendant could not complain of such error because it had asked similar questions of its own witnesses; but it was there held that an appellant is not precluded from taking advantage of exceptions, taken to incompetent testimony, although he has introduced similar testimony in his own behalf, the Supreme Court of Iowa there saying: "It is said by counsel for plaintiff that similar questions were asked by defendant of its witness. This does not prevent it from taking advantage of the exceptions it has preserved."

In *SanAntonio and Aransas Pass Railway Co.* v. *De-Ham,* 54 S. W. Rep. 396, (Court of Civil Appeals of Texas, June 29, 1899), it is said by the court: "It is contended, however, that, after the admission of the objectionable evidence, defendant also offered proof upon the matter, and is, therefore, estopped to complain. We do not think this contention sound. A defendant has the right to meet the plaintiff's case, as made under the rulings of the trial judge, and, after making objection and reserving proper exceptions, may combat the testimony of plaintiff, whether correctly admitted or not, without losing his rights on appeal."

In *Horres* v. *Chemical Co.* 57 S. C. 192, it was said by the court: "But the respondent contends that, inasmuch as the defendant, after the ruling of the circuit judge by which the testimony of plaintiff was allowed as competent, offered similar testimony, therefore, defendant has waived his objection to such testimony. * * * It cannot be good law that, after a party has excepted to the ruling of the presiding judge, admitting incompetent testimony (which ruling is the law of the case on that trial in the circuit court), the exceptor is prevented from cross-examining plaintiff's witness on the matter excepted to, or in offering testimony in his own interest on the same line." In the latter case it was distinctly held that the appellant does not waive his right to except on

appeal to testimony, admitted over his objection, by offering testimony in his own behalf in reply on the same line.

In *Washington, etc. Co.* v. *McCormick,* 19 Ind. App. 664, it was held that, where a party objects to the admission of evidence and afterwards introduces evidence of the same character in rebuttal thereof, he does not thereby waive his objection, the court there saying: "After the court had held, over appellant's objection, that the evidence was competent, and had permitted appellee, who had the burden, to introduce such evidence to maintain his case, appellant, in seeking to overcome the case made by appellee, could follow the theory laid down by the court without impliedly admitting the court's theory to be right, and without waiving his right to question the court's action."

*Third*—The deposition of a policeman, named Finnegan, was taken by the appellant before the trial, and was read upon the trial to prove certain facts in regard to the occurrence of the accident. The policeman witnessed the accident, and saw the car when it struck appellee and knocked him down, and testified as to what he saw and did. Upon the cross-examination of Finnegan, the appellee asked him certain questions, which called out the fact that he took the motorman and conductor of the train of cars, which caused the injury, into his charge, or, in other words, arrested them. The questions, calling out the fact of the arrest of the motorman and conductor, were objected to at the time they were asked of the witness when the deposition was taken, and were also objected to at the trial before the answers were read to the jury. A motion was also made by counsel for appellant that the answers be stricken out. But the motion was denied, and the answers were read to the jury.

This evidence in regard to the arrest was improperly admitted by the trial court. There was no charge of willful and wanton conduct on the part of the motorman and conductor in the declaration, but only a charge of ordinary negligence on the part of the company. The admission of this evidence

tended to make the impression upon the minds of the jury, that the motorman and conductor had been guilty of committing an act, which was criminal in its nature, and as the verdict of the jury, before its reduction by a *remittitur,* was $12,500.00, it may be that the jury came to the conclusion, in view of this evidence, that they had a right to award punitive damages. The theory, upon which the introduction of this testimony is sought to be justified, is that the officer's act in making the arrest was a part of the *res gestæ*. It can not be so regarded. The appellee, after receiving the injuries in question, was taken to a doctor's office and examined, and was there quite a long time, and, after he had been there several hours, was taken to his daughter's house distant several miles from the place where the accident occurred. The arrest in question was made, or the motorman and conductor were taken in charge by the policeman, at the same time when appellee was taken from the doctor's office, near the place where the accident occurred, to his daughter's house. Inasmuch as the arrest was made several hours after the accident happened, it cannot be regarded as a part of the *res gestæ*. An act or declaration can only be considered as a part of the *res gestæ* when it illustrates, explains, or interprets other parts of the transaction, of which it is itself a part. (*Chicago West Division Railway Co.* v. *Becker,* 128 Ill. 545). In *Pennsylvania Co.* v. *McCaffrey,* 173 Ill. 169, where it was held that a certain act was not a part of the *res gestæ* because it took place some time after the accident occurred, we said: "That which occurs before or after the act is done, is not a part of the *res gestæ,* although the interval of separation is very brief." (See also *Montag* v. *People,* 141 Ill. 75). Greenleaf in his work on Evidence, (vol. 1, sec. 108) says upon this subject: "The principal points of attention are, whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character."

This precise question arose in *Luby* v. *Hudson River Railroad Co.* 17 N. Y. 131, which was an action for damages, where the plaintiff was struck by one of the defendant's cars, while crossing a street in the city of New York, and on the trial evidence was allowed to be given by a police officer, against the objection of defendant, that he arrested the driver of the car; and it was there held that the fact of the arrest was irrelevant, and may have improperly influenced the jury in their judgment, the Court of Appeals of New York there saying: "That fact was irrelevant to the case, and we cannot tell what influence it may have had upon the minds of the jury. It is true that the jury ought not to attach any importance to the circumstance in trying the issue before them, but this only proves that this fact ought not to have been shown for their consideration. It certainly has some tendency to prove that at the very time of the transaction the defendant's driver was considered by the officer and others as guilty of culpable negligence. The question of his negligence was in issue and on trial; and how far the jury were aided in their conclusion by the manner in which the driver was treated by a police officer, or others who witnessed or were near the transaction, it is impossible for us to say. There is no pretense for saying that this evidence was necessary or proper for the purpose of identifying the occasion."

*Fourth*—Appellant placed upon the witness stand a witness by the name of Stewart from Lowell, Indiana, where the appellee lived, for the purpose of establishing certain facts, tending to show that the sickness and ailments of the appellee existed before the accident. At a subsequent stage in the trial appellee introduced testimony for the purpose of impeaching the witness, Stewart. But before the impeaching testimony was gone into, the appellee upon the cross-examination of Stewart asked him certain questions as to his past life, and his relations to his family, and his moral character. A part of such cross-examination was as follows:

"I have lived with Mrs. Metcalf twenty-one years. Q. Are you a married man? A. A married man? I was once; yes, sir, and I presume I am yet. My family live in Pennsylvania. Q. Did you run away from your family? (Objected to by counsel for defendant; objection overruled; exception by defendant). A. No, sir, I did not. I have letters from them every once in a while now. My wife is living. It is twenty-six years, I think, since I lived with my family. I have a son and a daughter. The daughter is married and the son was on the man-of-war *Montgomery* in the Spanish war. He was a machinist by trade. Q. Since you came away have you supported your family at all? (Objected to by counsel for defendant; objection overruled; exception by defendant). A. No, sir."

This cross-examination was improper. The appellee had a right to cross-examine the witness, Stewart, in any such way as to show his want of truthfulness if he was not a truthful man, but it was not material or proper to show his delinquencies in any other direction. It had a tendency to prejudice the minds of the jury against the witness to go into his private relations, and the condition of his domestic affairs. It was immaterial whether those relations were pleasant or not, or whether he supported his family or not. The only matters, connected with the character of the witness, with which the jury had any concern, or which had any proper place in the progress of the trial, were those only which affected the truth or falsity of his testimony.

In *Atwood* v. *Impson*, 20 N. J. Eq. 157, the chancellor said in reference to testimony attacking the character of a witness: "No one witness swears that he knows his general character for truth and veracity. They have heard something against him, mostly as to his character for other matters, beside truth and veracity, and evidently have heard them from persons who referred to particular transactions. This is not the evidence which the law permits, or should permit, to affect the credibility of a witness. With many,

telling the truth is a habit and a principle which they adhere to always, though they may indulge in drinking, swearing, gambling, roystering, or making close bargains. With others, lying is the habit or principle, and if elevated to be senators or legislators, or made church members or deacons, it does not always reform them. The object of the law is to show the character of the witness as to telling the truth; general reputation in the community where he is known is the test, and the only test which the law allows as to character."

For the errors above indicated in the admission of irrelevant, incompetent and improper evidence, the judgments of the Appellate Court and the circuit court of Cook county are reversed, and the cause is remanded to the latter court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*