## Libbie Waterstrow, Appellee, v. National Americans, Appellant.

### Gen. No. 5,804.

1. RELEASE, § 8*—*when resort to equity necessary to avoid fraudulent release.* Where there is fraud in the execution of a release, such as misreading it or substituting one paper for another, or any like trick, recovery can be had on the instrument at law, notwithstanding the release; but where the signature is not obtained by fraud, resort must be had to equity to avoid the release.

2. INSURANCE, § 852*—*when by-law of benefit society no bar to suit to set aside a fraudulent release.* A by-law of an association depriving the beneficiary of the right to maintain an action to set aside a compromise unless written revocation is made and money refunded within ten days after the compromise was made, *held,* no bar to an action to set aside a release obtained from beneficiary by fraud.

3. INSURANCE, § 911*—*when payment should be ordered according to terms of benefit certificate.* On bill to set aside a release obtained from beneficiary by fraud, a decree permitting recovery of the benefits should order payments payable in instalments when so provided by the certificate.

4. INSURANCE, § 907*—*when proofs of death insufficient to show date of inception of disease.* Proof of death stating that deceased member had taken sick on or about a certain date and that the cause of death is said to be cancer, *held* not to state that deceased had cancer on said date.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

5. INSURANCE, § 887*—*when written report of an investigation bureau, incompetent.* A report of an inspection bureau obtained at the request of the order concerning statements of the doctor who treated the deceased member as to length of time cancer existed, *held* incompetent.

6. INSURANCE, § 852*—*when evidence sufficient to prove release from beneficiary was obtained by fraud.* Evidence *held* sufficient to show that a written release by beneficiary of all claims against the society was procured by fraud on the part of an adjuster for the benefit society.

7. APPEAL AND ERROR, § 361*—*when defense that suit was premature, waived.* Objection that suit was prematurely brought cannot be urged for the first time on appeal.

8. APPEAL AND ERROR, § 361*—*when grounds of defense waived.* Decree granting recovery on a benefit certificate, without deducting certain assessments as provided by by-laws of society, cannot be complained of where such by-law was not pleaded as a defense and no objection was made which raised the question below.

Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed October 17, 1913.

DAVID C. FINLEY and SEARS & SOLFISBURG, for appellant.

JOHN M. RAYMOND, JOHN K. NEWHALL and FRED B. SHEARER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Under date of December 27, 1909, the National Annuity Association, whose name has since been changed to National Americans, issued a beneficiary certificate to Chris M. Waterstrow, a member of Aurora Assembly No. 187, of said order, located at Aurora, Illinois, wherein his wife, Libbie Waterstrow, was made beneficiary, and it was therein provided that in the event of the death of the member in good standing said beneficiary should be paid by the association an annuity of three hundred dollars per year for ten years, payable quarterly. Waterstrow died September 23, 1911.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Under a provision of the certificate, an immediate relief benefit of one hundred dollars was paid to the beneficiary. Thereafter, proofs of death were made. Afterwards, an adjuster of the order visited Mrs. Waterstrow, paid her fifty dollars, and took from her the policy, with a release thereof signed by her. Four days later she sent the order a revocation of said settlement, but did not return the money. Afterwards she brought an action on the case against the order, and in her declaration charged that the adjuster had fraudulently obtained said release and the policy from her, and she set out wherein the fraud consisted and sought to recover the present worth thereof. She added a count in trover. After issue joined upon this declaration, Mrs. Waterstrow, by leave of court, changed the action from law to chancery and filed a bill in equity, in which she alleged the issue of the certificate, that her husband obeyed all rules of the order and paid all dues and died, and that proofs of death were furnished and that the adjuster of the order obtained a settlement with her for fifty dollars by false and fraudulent statements and conduct, set out at length in the bill, and that she had revoked the settlement. She asked that the release be set aside and that she be given a decree for the present value of the policy and other relief. The order answered, admitting the issue of the certificate, setting up the settlement as a defense, denying that it was procured by fraud, and making various other allegations. The court heard the proofs and entered a decree, finding the settlement fraudulent and setting it aside and crediting the order with the one hundred dollars paid as an immediate relief benefit and the fifty dollars paid on the settlement, and directing that the order pay the beneficiary one hundred and fifty dollars, being two quarterly instalments, due at the date of the decree, and that the order further pay the beneficiary two thousand seven hundred dollars in quarterly instalments of

seventy-five dollars each, on the 23rd days of December, March, June and September, for nine years after December 23, 1912, until two thousand seven hundred dollars was fully paid, with execution for each overdue and unpaid instalment. The order appeals and claims (1) that under section 77 of the laws of the order, and the proofs, this beneficiary certificate is null and void; (2) that the settlement was without fraud and is binding; (3) that, under section 44 of said laws, the revocation of the settlement was not effective, because the money paid appellee at the settlement was not returned; (4) that the suit was brought before any instalment was due and therefore should have been dismissed; (5) that it was error to permit the change from law to equity; (6) that, under section 88 of said laws, certain deductions should have been made and therefore the decree is for too large an amount. The beneficiary assigns cross-errors and urges (7) that she was entitled to a decree for the present worth of the certificate, payable at once and not in instalments.

Section 77 of the laws of the order provides, among other things, that if a member dies of cancer, which developed within twelve months from the acceptance of his certificate, the same shall be null and void and all liability of the order cease, except to pay the beneficiary an amount equal to all assessments the member has contributed to the association. Waterstrow died on September 23, 1911, of cancer of the mouth. The certificate was issued December 27, 1909, and Waterstrow accepted the certificate on January 12, 1910.

The proofs of death contained the following: "We have made personal inquiry concerning the cause of death of said Chris M. Waterstrow, and find that he was taken sick on about the 11 day of Oct., 1910, and that the cause of death is said to be cancer of mouth and throat, and to our personal knowledge said deceased member had not been complaining of above-named trouble prior to the date of sickness first above mentioned."

Appellant argues that this shows that Waterstrow was afflicted with cancer on October 11, 1910, which was within one year from the acceptance of the contract, and therefore the association was only liable to pay the beneficiary the assessments paid by the member, the amount of which was small. The language above quoted from the proofs of death does not state that Waterstrow had cancer on October 11, 1910. These proofs of death were not made by the beneficiary, but by J. R. McDole, the local president, and by L. H. Valentine, the local secretary, of Aurora Assembly No. 187, of the appellant order. They filled out these blank proofs in the presence of the beneficiary, after asking her questions. She did not tell them that her husband had cancer at that date, but only that he was sick one day or two days in October, 1911, and thereafter worked regularly at his employment as fireman of a stationary engine, and first consulted a physican in June, 1912, and then not for the ailment which was subsequently pronounced cancer. It is clear from the evidence in McDole and Valentine that they not only did not understand the beneficiary to say that Waterstrow had cancer in October, 1911, but that they did not intend to so state in the proofs of loss, and that they did not suppose or think that Waterstrow, with whom one of them was well acquainted and in frequent contact, had cancer at that time or prior to June following. It seems that the order requested some investigation concerning this matter from an organization which bore the name "National Inspection Bureau." The order offered in evidence a letter or report from the general manager of said bureau, in which there were allegations that Dr. J. W. McDonald of Aurora, who had treated Waterstrow in June, July and August of 1911, had said concerning Waterstrow's disease of cancer that it had existed three or four weeks and might have existed two or three years. The statements contained

in this report were entirely incompetent as evidence. Appellant introduced no other proof that the deceased was affected with cancer within one year after the certificate was accepted.  This proof was insufficient to defeat the policy.  Appellee proved affirmatively by Dr. McDonald that Waterstrow first came to him on June 18, 1911; that he was suffering from an infection at and just above the wrist on one arm; that the doctor opened the arm, cleaned out the diseased tissues and put in antiseptic dressing and thereafter treated' him during the rest of June and the month of July for the condition of this arm and that the last time Waterstrow was in his office, about August 12, 1911, he noticed a redness upon the left corner of his mouth, a condition which he had not noticed before; that he examined the mouth and found an ulcerated tooth just inside of this point, which tooth it seems was jagged and had irritated the lip and the irritation extended down to the jaw and the growth was malignant. The doctor told Waterstrow that this was very serious and shortly thereafter told his wife that it was cancer of the mouth.  As they were poor, the wife sent him immediately to New York State to his mother, who was well-to-do.  The mother placed him in a hospital at Rochester the next day after he arrived and he died in three weeks.  Dr. McDonald gave it as his opinion that this cancerous condition of the mouth had existed from six weeks to two months at the time he first discovered it and that the longest time in which it could have been developing at the stage when he first saw it was two or three months.  There was other evidence that he worked regularly and gave no indications of suffering' from any disorder until he consulted Dr. McDonald.  When all the evidence on this subject is considered, the court could reach no other conclusion than that this certificate was not void under section 77.

Mrs. Waterstrow testified that at her interview with

the adjuster, she was alone except that she held in
her arms a baby which was sick and crying; that she
told the adjuster that she was uneducated and ex-
pected him to deal honestly with her and that he an-
swered that he would; that he told her that he found
by looking over the by-laws that she was entitled to
nothing; that her husband died of a cancer which he
had had for two years before his death; that he had
a letter in his pocket from Dr. McDonald, in which
the doctor said that her husband had cancer for two
years before he died; that she told the adjuster that
her husband was not sick two years before he died;
that the adjuster told her that he had seen and talked
with Dr. McDonald, and all he could do was to pay her
the assessments, and she could take fifty dollars or
nothing. The adjuster told her that he had been with
Valentine all the forenoon and that he had seen Mc-
Dole. He asked her to get the policy. She got it.
He wrote the receipt and release upon it. She signed
it and he gave her a draft for fifty dollars, which she
cashed the next day. The adjuster denied that he
told her that he had a letter from McDonald, but stated
that he had present this report from the National In-
spection Bureau and that he told her what that said
Dr. McDonald had stated, and that he also called her
attention to the language above quoted from the proofs
of death. The cross-examination of the adjuster
sufficiently shows that, even by his own account, he
conveyed to her the understanding that Dr. McDonald
had stated that the cancer had existed within one year
after this certificate was accepted. If this were all
the proof on this subject we could not say that the
court should have believed the adjuster and disbe-
lieved Mrs. Waterstrow. But Valentine, the local
secretary, testified that the adjuster visited him be-
fore he went to obtain this settlement from Mrs.
Waterstrow and that the adjuster told Valentine that
he had in his possession a signed statement from Dr.
McDonald to the effect that Waterstrow had cancer

for a year and one-half to two years before his death, and that he then told the adjuster that he saw Waterstrow frequently up to within six weeks or two months before his death and that he never showed any signs of distress until about that time and that he did not believe that Waterstrow had cancer or was suffering in any way until within six weeks or two months of his death. McDole testified that in the evening after the settlement the adjuster told him that he had personally seen Dr. McDonald and that Dr. McDonald told him that Waterstrow had cancer for two years before his death, and that he told the adjuster that he did not believe that Dr. McDonald had ever said so. He also testified that earlier in the day, knowing that the adjuster had arrived, he tried to get Dr. McDonald, but the doctor was engaged upon a confinement case and could not be seen. The adjuster denied that he made these statements to Valentine and McDole. Dr. McDonald testified that he had never seen the adjuster and had never told him or any one that Waterstrow had cancer a year or two before his death. Appellant called the person who had furnished the National Inspection Bureau its information. He declared he did not remember what report he made and refused to testify what Dr. McDonald told him unless he was first shown his written report and this was not done. It is obvious therefore that the court was warranted in believing that the adjuster falsely and fraudulently told the beneficiary that her husband had died of cancer which existed within one year after the certificate was accepted and that he had a letter from Dr. McDonald in his possession stating that to be the fact, and that the company was not liable to her, except for a return of the assessments paid, and that she must take fifty dollars or nothing, and that in reliance upon these statements she took the fifty dollars and signed the release, and that said release was obtained by fraud.

Section 44 of said laws provided that where there was an apparent difference of judgment between the

association and the beneficiary as to liability on a benefit certificate and a compromise was made, no action at law or in equity should be commenced by the beneficiary to set aside the compromise unless within ten days after the compromise the beneficiary should send to the association a written revocation of such compromise and return therewith all the money received through the compromise and that a failure to give such written notice and to refund such money within ten days should be a complete bar to any action at law or in equity on such benefit certificate. The proofs warrant the conclusion that this was not a case of an apparent difference in judgment between the association and the beneficiary but a case of an attempt by the association through its adjuster to defraud the beneficiary and that this section 44 ought not to be considered applicable. If said section 44 means that in case the association defrauds its beneficiary, the latter must discover the fraud within ten days and repudiate it in writing and return the money received or the fraud must be permitted to stand, then we must hold such section 44 contrary to public policy. If such a by-law must be literally enforced in a court of law this is now a proceeding in equity. The bill offered to credit the order with the amount paid when said release was obtained and the decree gave that credit and we are of opinion that that is all to which appellant was entitled. *Farmers' & Mechanics' Life Ass'n v. Caine,* 224 Ill. 599.

This suit was begun January 24, 1912. Appellant contends that no instalment was then due and therefore the decree must be reversed. In its answer appellant expressly stated that at the time this suit was begun, only one instalment was due. It made no claim in that answer that the suit was prematurely brought. The immediate relief benefit of one hundred dollars and the fifty dollars paid at the execution of the release were not paid upon any particular instalment. Appellant cannot be heard to say in this court for the first time that the suit was prematurely brought.

Section 40 of the Practice Act of 1907 (J. & A. ¶ 8577) provides that if a party, commencing a suit, misconceives his remedy, he may have the suit transferred from law to chancery or from chancery to law, as the case may be, and the suit shall then proceed as though originally commenced on such side of the court. This action was commenced at law. Where there is fraud in the execution of a release, such as misreading it or substituting one paper for another, or any like trick, recovery can be had on the instrument at law, notwithstanding the release; but where the signature is not obtained by fraud, resort must be had to equity to avoid the release. *Hartley v. Chicago & A. R. Co.*, 214 Ill. 78; *Chicago City Ry. Co. v. Uhter*, 212 Ill. 174; *Papke v. Hammond Co.*, 192 Ill. 631. Under these authorities appellee could only avoid this release in a court of equity and the suit was therefore properly transferred from law to equity.

Section 88 of said laws provides that in the event of the maturity of a certificate by death before the member has contributed ten years' assessments, the unpaid assessments shall be charged against the certificate and deducted from the final payments. This was not done in this case and the failure to make those deductions presents the only serious question. Appellant did not set up this defense in its answer nor suggest that it was entitled to any such deduction. In its answer it stated that if the allegations of the bill were true, then under the by-laws and constitution of appellant, appellee was entitled to three hundred dollars per year in four equal annual instalments of seventy-five dollars each. When appellant's counsel offered in evidence what he called the by-laws of appellant, he stated that it might be that some of the by-laws were not in force at the time of the death of Waterstrow and that these by-laws need not be considered. Said section 88 was not put in evidence except in that way. It was then agreed by counsel for the respective parties that each party might call the attention of the

court to such sections of the by-laws as they thought proper. The record does not show that the attention of the court was ever called to said section 88. As this defense was not pleaded, and no objection was made which raised this question, and as the manner in which said laws were offered makes it not certain that section 88 was in force when Waterstrow died, and as the attention of the court is not shown to have been called to this section of the law at all, we conclude we ought not to reverse because of failure to make said deductions. What the unpaid assessments would be for the unexpired portion of the ten years was a matter peculiarly within the knowledge of appellant, and it produced no proof on that subject.

We conclude that it was proper for the court to make the payments payable in instalments as the certificate provided. The court should enforce the contract which the parties made. While we hold that the beneficiary, being properly in a court of equity, was not required to bring a suit for each instalment, or forty suits in all, yet to enforce payment in one lump sum now, contrary to the terms of the certificate, would be unjust to the other beneficiaries. We consider the cross-error not well assigned. The additional abstract will be taxed against appellant.

The decree is affirmed.

*Affirmed.*