[No. 19160. Department One. July 18, 1925.]

THE STATE OF WASHINGTON, *Respondent,* v. TOM PATTISON, *Appellant.*[1]

CRIMINAL LAW (140)—EVIDENCE—DECLARATIONS OF CONSPIRATOR. The statement of one, caught by officers in the unlawful possession of intoxicating liquor, that he was making it for accused, is not admissible in evidence against accused as the testimony of a conspirator, since the conspiracy had come to an end and the statement was not made in furtherance of the conspiracy.

APPEAL (455)—REVIEW—HARMLESS ERROR—OBJECTION REMOVED SUBSEQUENTLY. In a prosecution for the unlawful possession of liquor, error in admitting testimony that the person in charge stated to officers that the liquor belonged to accused, is cured by accused, where he called such party as a witness to explain the fact that a case of malt syrup and a package of hops, found with the liquor, had been addressed and sent through the mail to accused, his testimony being that appellant obtained the same at the request of the witness who claimed ownership and assumed all responsibility for the crime, and denied making the statements to the officers; since the officers' testimony would be competent in rebuttal (MACKINTOSH, PARKER, and FULLERTON, JJ., dissenting).

INTOXICATING LIQUORS (30, 50)—UNLAWFUL POSSESSION—EVIDENCE —SUFFICIENCY. A conviction of the possession of intoxicating liquor for the purpose of unlawful sale is sustained by evidence of finding mailed packages addressed to accused, containing the ingredients for making beer, of which four hundred bottles were found on hand, that accused had used a certain Ford car, containing cases and empties, which approached the place at the time of the raid, and was abandoned by a person resembling the accused.

Appeal from a judgment of the superior court for Clallam county, Card, J., entered January 23, 1924, upon a trial and conviction of the unlawful possession of intoxicating liquor. Affirmed.

*G. F. Vanderveer* and *W. G. Beardslee,* for appellant.

*John M. Wilson,* for respondent.

ASKREN, J.—Appellant, being dissatisfied with his conviction upon an information charging him not only

[1]Reported in 237 Pac. 1000; 241 Pac. 966.

with the crime of unlawful possession of intoxicating liquor, but with having been twice before convicted of violation of the liquor laws, brings the case here for review.

Several assignments of error are urged, which may be divided into two groups: first, error in admission of testimony; and secondly, insufficiency of the evidence at the close of the state's case to warrant submitting the case to the jury.

Several officers of Clallam county, on August 1, 1924, armed with a search warrant, went to a shack where were found two men and a large quantity of intoxicating liquor. There was also a case of malt syrup and a package of hops addressed to appellant, and they bore evidence that they had come by mail. A man named Hansen was actually in charge, the other being a visitor. At the time the officers took possession of the liquor, they talked with Hansen regarding its ownership. At the trial these officers were permitted to testify that he told them he was making the liquor for appellant and that he had told appellant he was afraid he would be caught, but was assured there was no danger. They also testified that, while they were talking with Hansen, an automobile drove close to the shack and that Hansen told them "here comes Tom (meaning appellant) after another load, and if you wait you can probably catch him." The person driving the car, however, was not caught at that time. Appellant was not present during any of the conversation referred to, but was arrested some time later. Timely objections were made to the introduction of this evidence.

It was the contention of the state that, inasmuch as there was evidence connecting appellant with Hansen, and it appeared that they were jointly engaged in the manufacture and possession of the liquor, there was

such a concert of action that the statements of one could be used against the other. The state relies upon our decisions to the effect that, where two or more persons are shown to have acted in concert, the acts and statements of each, although in the absence of the other party, are admissible against him. *State v. Pettit,* 74 Wash. 510, 133 Pac. 1014. The ground upon which this rule is based is that, where two or more persons undertake an enterprise, each of the parties is presumed not only to be acting for himself, but also on behalf of the other party to the conspiracy or wrongful act, and that the things said or done in furtherance of the conspiracy are properly chargeable to both.

But this rule has no application where the conspiracy has come to an end and the things that are said or done are not in furtherance of the conspiracy. Especially is this true where the statements sought to be shown are made by one who made them to exculpate himself and to inculpate another. 16 Corpus Juris, §§ 1305, 1309.

It is quite apparent that, when the officers made the raid, any statements made thereafter by Hansen could not be in furtherance of the conspiracy, because nothing he did or said would tend to accomplish the object for which the conspiracy was formed. *State v. Nist,* 66 Wash. 55, 118 Pac. 920, Ann. Cas. 1913C 409.

The admission of this testimony was error, but appellant promptly cured it. Inasmuch as the package of hops and case of malt syrup found on the premises had come through the mail and were addressed to appellant, it became necessary for him to explain this seeming ownership to the jury. In seeking to deny it, he called Hansen as a witness, who testified that the liquor and malt syrup and hops were his own property and not that of appellant, and testified that appellant

had gotten the ingredients in Seattle at Hansen's request and mailed them to him, but that they were addressed to appellant. Hanson assumed all responsibility for the crime in question.

He was also asked by appellant's counsel whether he had ever made the statements to the officers that the liquor was appellant's. This he positively denied. Appellant having offered the evidence of the witness Hansen that the liquor and ingredients belonged to him (Hansen), it would then be proper for the state to cross-examine him as to whether he stated to the officers the night of the raid that the property belonged to appellant, and if he denied it the same as he did here on direct examination by appellant's counsel, it would be proper rebuttal for the state to offer the evidence of the officers contradicting him. As far as appellant is concerned, it could make no difference whether this testimony concerning Hansen's statements to the officers was given in rebuttal or offered as a part of the state's case in chief. While the proper order of proof would be to offer it in rebuttal, the only question that appellant can raise in regard to it now is whether without this evidence there was a sufficient showing by the state in chief to authorize the court in putting appellant to his defense, and this raises the second error urged by appellant.

We have carefully examined the record and are satisfied that there was sufficient evidence to go to the jury. In addition to the mailed packages found in the room, addressed to appellant, and which contained the ingredients from which the intoxicating liquor (beer) was being made, there were approximately 400 bottles of beer on hand, and the quantity thereof was sufficient to suggest that it was being manufactured for the purpose of sale. Appellant was seen several times shortly prior to the raid in a certain Ford car, and on the night

in question while the officers were on the premises where the raid was made, the lights of a car were seen coming down the road. It came to a short distance from the shack, when the driver, evidently seeing the sheriff's car, tried to turn his own car around, but being unable to do so abandoned it. The car contained two cases of caps and a sack of empties, indicating that it was being used in connection with the manufacture and sale of the liquor which the officers found. Upon examination, this car was found to be the same one that appellant had been seen driving, and when the driver ran away from the car, at least three persons who saw him testified that, while they could not positively identify the person as being appellant, they saw someone who looked like appellant, "and should judge that it was him." The weight of this evidence was for the jury.

It appearing, therefore, that there is no reversible error in the case, the judgment of the trial court is affirmed.

TOLMAN, C. J., MACKINTOSH, PARKER, and MITCHELL, JJ., concur.

## ON REHEARING.

### [En Banc. December 23, 1925.]

ASKREN, J.—Upon rehearing En Banc, this case was argued upon a point not raised in the original briefs. That question arose over the introduction by the state of evidence of certain officers that a witness had made certain statements concerning the ownership of the liquor in question. The Departmental opinion held that the introduction of this evidence was error, but that, through the subsequent testimony in the case, it became competent, and that the error had been cured, or was at most harmless error. Upon rehearing, coun-

sel for appellant strenuously attacks the holding of the court in this particular. It is, therefore, deemed advisable to supplement the reasons controlling that holding, and to cite authorities justifying the conclusion therein reached.

Appellant insists that, because the evidence offered by the state in chief as to statements of the witness Hansen was offered as substantive testimony, it became error which could not thereafter be cured. The authority for this statement is Wigmore on Evidence (2d ed.) p. 189. The text, to our minds, does not support such a construction. It reads:

"Waiver of Objections. . . . Another instance is the curing of an error of admission by the opponent's subsequent use of evidence similar to that already objected to;"

The note appended to this text is as follows:

"But it is otherwise where the subsequent evidence is introduced merely in *self-defense* to explain or rebut the original evidence;"

citing *Chicago City R. Co. v. Uhter*, 212 Ill. 174, 72 N. E. 195. An examination of that case shows that the plaintiff, in a personal injury action, offered testimony of witnesses that they had never heard of his having certain disabilities. The defense timely objected thereto, and as part of the defense offered evidence of other witnesses tending to show that they had heard of such disabilities. The court held rightly that the error in the introduction of the original testimony was not waived, because the subsequent evidence was offered only as against that originally produced.

The reason for such a rule is apparent. When one is confronted with improper evidence, he is compelled to meet it in his defense with the same kind; but the rule is entirely otherwise if the evidence offered is not

in defense as to the improper testimony, but is offered in defense against the original charge; and then, upon the question of the witness' impeachment, the evidence becomes competent. We have already committed ourselves to this doctrine in *State v. MacLeod,* 78 Wash. 175, 138 Pac. 648. In that case, the defendant was charged with manslaughter through attempting to produce an abortion. The state offered evidence in chief regarding his intoxication. It was urged, upon appeal, that this was error, because the evidence was competent only upon rebuttal in the impeachment of the doctor's testimony. This objection was disposed of in the following language:

"It may be admitted, for the purpose of this decision only, that the evidence offered as to intoxication was inadmissible as a part of the state's case. The defendant went upon the stand and testified in his own behalf. In rebuttal, for the purpose of affecting his credibility, the evidence as to intoxication at the times and places mentioned would have been competent. Where offered evidence is not competent at the time admitted, but becomes competent by the development of the trial, the fact that it was admitted irregularly does not constitute reversible error."

The same view was taken by the supreme court of Missouri in *State v. Beedle,* 180 S. W. (Mo.) 888. In that action, it was urged that the state had improperly offered evidence in chief as to similar crimes when such evidence would only have been proper in rebuttal, after the defendant had offered testimony regarding his intent. The court said:

"While ordinarily the offense of carrying a pistol is not such an offense as to set in motion the rule that the intent with which the act is done may be shown by proof of other crimes of the same kind in the same vicinity and about the same time, yet the peculiar defense relied on in the instant case made the matter of

intent an important fact in issue. Indeed, it became
the only question in issue, and proof of defendant's
actions with this pistol in the same town and shortly
before the having of the pistol by the defendant in the
barber shop would have been clearly competent in re-
buttal. Since it would have been competent in rebuttal,
shall we convict the learned trial court of error and
reverse this case, because he let this proof casting
light upon defendant's intent into the case by the
state's evidence in chief rather than in rebuttal? We
do not think we should countenance such an ultra re-
finement of technicality and disallow this contention.
We do this the more readily since the learned counsel
for defendant before this evidence came in had already
said in his opening statement that the defense would
be on the sole issue of the intent with which defendant
had the pistol, and since, as we state above, this turned
out to be the sole defense urged, or shown in the de-
fendant's proof.''

While it is apparent from the above decision that one
of the motives which induced the trial court to permit
this evidence in chief was the statement of defendant's
counsel that he was going to show a certain state of
facts, yet we think the real reason governing the appel-
late court's action was that the testimony in view of
all the evidence in the case, was competent.

Appellant admits that the offered evidence was
proper impeaching evidence; and, if it had been intro-
duced in the state's case in rebuttal, would have been
admissible. It may not be amiss to illustrate the prac-
tical effect of the situation as presented to the trial
court. A reference to the Departmental opinion will
show that Hansen was produced as a witness by the
defense, not to deny the statements alleged to have
been made to the officers, but in behalf of the defendant
to explain away the incriminating evidence of the ma-
terials used in making the intoxicating liquor, which
bore the name of appellant, and which also showed evi-

dence of having been delivered by a common carrier. In doing this, Hansen claimed to be the owner of the materials in question. Upon being asked if he had made statements to the officers that the materials belonged to appellant, he denied the same. If the state, in rebuttal, had attempted to recall the same officers who had testified in chief to prove that he had stated otherwise, the court would not have permitted it, upon the ground that that evidence had already been heard by the jury. If, at the close of all the evidence, appellant had requested the court to strike the testimony of the officers, the court would have been compelled to refuse the motion, because, even though improperly admitted, in the first instance, it was competent evidence in rebuttal, and belonged in the case. If the court could not strike this testimony because clearly competent, then, to hold with appellant on this issue would place us in the position of reversing the action of the trial court because of the order in which the proof was received, the very thing we held in *State v. MacLeod, supra*, would not be done.

The suggestion that the jury would consider this as substantive testimony is equally untenable, for no request was made by appellant to have the jury instructed to consider it only as a matter of impeachment. If counsel for appellant had requested that the jury be instructed to consider it only as impeaching testimony, and the court refused, a different question would be presented.

Nor does it seem that the introduction of such impeaching testimony in chief prejudiced the appellant in the trial of the action, or took away from him the manner of presenting his defense. It may be conceded that the courts will not permit an intentional disregard of the usual and customary method of procedure as to

the time when evidence shall be produced in a case; and, if the record evidenced an intention on the part of the prosecutor or the court to take any advantage of the defendant, we should not hesitate to interfere; but the record shows that both the prosecutor and the trial court were of the opinion that this was proper evidence at the time of its reception. It clearly appears that it was competent at the close of appellant's case, and that no prejudice could possibly have resulted.

The judgment of the trial court is right and it is affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and MITCHELL, JJ., concur.

MACKINTOSH, J. (dissenting)—Upon the re-argument, this cause was presented upon a point which, though referred to in the former opinion, had not been discussed in the briefs upon the original hearing, or in oral argument at that time, and I am now of the view that the opinion as reported is in error upon this point. I have reference to the admission in the state's case in chief of evidence of a conversation had by officers with one Hansen, and the court's allowing them to testify as to Hansen's statements connecting the appellant with the crime. The opinion states that the admission of this testimony was erroneous, but holds that the error was cured. As I now view it, the statements were improperly admitted and the error was not cured.

At the time the testimony was introduced by the state in its case in chief, it was introduced as substantive proof of the appellant's guilt. It tended to establish the fact that the appellant was the owner and possessor of intoxicating liquor; and, of course, although improperly admitted, was necessarily of great weight with the jury in pointing to the conclusion that the appellant was guilty. With that evidence in the case, which,

parenthetically it may be stated, was about the strongest evidence in the record of the appellant's guilt, it became necessary for the appellant to meet it. He, in self defense, was forced to place upon the stand the witness Hansen to deny that the statements had ever been made. The error was not cured by this act of the appellant, for the production of Hansen as a witness was forced by the original error. The use by a person, against whom improper testimony has been admitted, of improper testimony on his own part to meet it, is not a waiver of the original erroneous ruling. Where the subsequent evidence is introduced merely in self defense to explain or overcome the original evidence, the person producing the subsequent evidence has not thereby lost his right to claim as error the admission of the original evidence. *Chicago City R. Co. v. Uhter,* 212 Ill. 174, 72 N. E. 195; 1 Wigmore on Evidence (2d ed.) p. 189.

Upon another ground, the error must be held not to have been cured. The testimony produced by the state could only have been properly admitted in rebuttal as impeaching Hansen's testimony, if Hansen was produced as a witness by the appellant. That testimony would only be relevant and to be considered by the jury as affecting the degree of credit to be given to Hansen's testimony. It was purely impeaching evidence, and if it had been introduced in the state's case in rebuttal, would have been admissible. But to allow the state to impeach the appellant's witnesses before those witnesses have been introduced, and before, as a matter of fact, it was determined that they were to be introduced, is to take out of the hands of the appellant the conduct of his own case, to either force him to place witnesses upon the stand whom he otherwise might not use, or to place those witnesses upon the stand with a cloud already over them. This would be, as a practical

matter, a most dangerous condition to allow to obtain. If such a rule were established, it would place in the hands of plaintiffs in civil as well as criminal cases the opportunity, by introducing impeaching testimony in the case in chief, to minimize the effect of the testimony of the witnesses thereafter introduced by the defendant. Independently, therefore, of the question of whether the testimony at the time it was introduced was substantive testimony or was merely impeaching, it, in either event, was such an error that it was not cured by the appellant's production of Hansen as a witness.

There have been of late a number of wrecks of old and serviceable rules of practice, but that should not excuse the throwing overboard of the remaining charts, blindfolding the pilot and allowing the trial of a lawsuit to take its own uncontrolled course. The advantage to the plaintiff of impeaching the defendant's witnesses in advance and forcing the defendant to meet improper, but damaging evidence, more than compensates for the burden usually on a plaintiff to sustain his case by the preponderance of the evidence. Defendants are destined to stormy voyages under sails such as this opinion hoists.

For the reason that I am now of the opinion that the judgment should be reversed and the cause remanded for a new trial, I dissent.

FULLERTON and PARKER, JJ., concur with MACKINTOSH, J.